**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEREMY SAWYER, derivatively on behalf of KINGOLD JEWELRY, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZHIHONG JIA, BIN LIU, JUN WANG, GUANG CHEN, ALICE IO WAI WU, and ZHIYONG XIA, <br><br> Defendants, <br><br> and <br><br> KINGOLD JEWELRY, INC., <br><br> Nominal Defendant. | Case No. _____ <br><br><br> **DEMAND FOR JURY TRIAL** |

<u>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**</u>

<u>**INTRODUCTION**</u>

Plaintiff Jeremy Sawyer ("Plaintiff"), by his undersigned attorneys, derivatively on behalf of Nominal Defendant Kingold Jewelry, Inc. ("Kingold" or "the Company"), files this Verified Shareholder Derivative Complaint against Individual Defendants Zhihong Jia, Bin Liu, Jun Wang, Guang Chen, Alice Io Wai Wu, and Zhiyong Xia (collectively, the "Individual Defendants," and together with Kingold, the "Defendants") for breaches of their fiduciary duties as directors and/or officers of Kingold, for violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and for contribution under Sections 10(b) and 21D of the Exchange Act. As for Plaintiff's complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through

Plaintiff's attorneys, which included a review of Defendants' public documents, announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding the Company, conference call transcripts, securities analysts' reports about the Company, legal filings, news reports, and information publicly available on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action seeking to redress wrongdoing committed by certain of Kingold's officers and directors from March 15, 2018 through the present (the "Relevant Period"), which has caused substantial damage to the Company.

2.      Based in the People's Republic of China ("PRC"), Kingold is a designer and manufacturer of purportedly high-quality gold jewelry and related items. In addition to selling its own branded products, Kingold also designs and produces items for other brands.

3.      From 2003 until June 2020, the Company was a member of the Shanghai Gold Exchange—the only legal provider of gold in the PRC—through which the Company obtained all of its purchased gold.

4.      In the past, the focus of Kingold's business was on producing gold jewelry from raw materials. Starting in 2016, however, the Individual Defendants caused the Company to begin expanding its business activities to include investing in gold as a commodity.

5.      In connection with the Company's gold investment operations, the Individual Defendants procured a number of loans from certain Chinese lenders, including Anxin Trust ("Anxin"), Chang'An Trust ("Chang'An"), Dongguan Trust ("Dongguan"), Evergrowing Bank

Yantai branch ("Evergrowing," also known as Hengfeng Bank), China Minsheng Trust ("Minsheng"), and Sichuan Trust (together, the "Creditors" or the "Lenders").

6.      The Individual Defendants used these loans to purchase gold from the Shanghai Gold Exchange, which was then held in the Lenders' facilities as security for the loans.

7.      What the Individual Defendants concealed from both the Lenders and the public, however, was that the purported gold used to secure the loans was not in fact gold, but rather copper bars coated in a gold layer (generally, the "Counterfeit Collateral Scheme"). Because the Company's loans were secured fraudulently, the Individual Defendants' public statements during the Relevant Period regarding the Company's loans and gold assets were materially false and misleading at all relevant times.

8.      The Counterfeit Collateral Scheme went largely unnoticed until the Company defaulted on several of its loans in late 2019. Upon the Company's default, the Lenders seized Kingold's gold collateral to liquidate it and recoup the value of the loans, only to discover that the collateral was not the AU9999 gold the Individual Defendants had promised to them, but merely gilded bars of copper.

9.      On June 24, 2020, the Shanghai Gold Exchange announced that the Company's membership had been cancelled, for violation of membership provisions.

10.      Several days later, the truth about Kingold's loans became public in an article published before the market opened on June 29, 2020 by Chinese media group Caixin Global, titled, "The Mystery of $2 Billion of Loans Backed by Fake Gold" (the "Caixin Article").[1]

11.      The Caixin Article described the Counterfeit Collateral Scheme and the discovery of the scheme as follows:

---

[1]      https://www.caixinglobal.com/2020-06-29/cover-story-the-mystery-of-2-billion-of-loans-backed-by-fake-gold-101572911.html (last visited September 9, 2020).

More than a dozen Chinese financial institutions, mainly trust companies, loaned 20 billion yuan ($2.8 billion) over the past five years to Wuhan Kingold Jewelry Inc. with pure gold as collateral and insurance policies to cover any losses.

What could go wrong?

Well, plenty, as at least some of 83 tons of gold bars used as loan collateral turned out to be nothing but gilded copper. That has left lenders holding the bag for the remaining 16 billion yuan of loans outstanding against the bogus bars. The loans were covered by 30 billion yuan of property insurance policies issued by state insurer PICC Property and Casualty Co. Ltd. (PICC P&C) and other smaller insurers.

The fake gold came to light in February when Dongguan Trust Co. Ltd. set out to liquidate Kingold collateral to cover defaulted debts. In late 2019 Kingold failed to repay investors in several trust products. Dongguan Trust said it discovered that the gleaming gold bars were actually gilded copper alloy.

The news sent shock waves through Kingold's creditors. China Minsheng Trust Co. Ltd., one of Kingold's largest creditors, obtained a court order to test collateral before Kingold's debts came due. On May 22, the test result returned saying the bars sealed in Minsheng Trust's coffers are also copper alloy.

Authorities are investigating how this happened. Kingold chief Jia flatly denies that anything is wrong with the collateral his company put up.

12.     The Caixin Article also commented on the Company's reliance on its gold-backed

borrowing and the magnitude of the scheme, stating the following:

Public records show Kingold's first gold-backed borrowing can be traced back to 2013, when it reached an agreement for 200 million yuan of loans from Chang'An Trust, with 1,000 kilograms of gold pledged. The two-year loan was to fund a property project in Wuhan and was repaid on time. Before this, Kingold's financing mainly came from bank loans with property and equipment as collateral.

Since 2015, Kingold has increased its reliance on gold-backed borrowing and started working with PICC P&C to cover the loans. In 2016, Kingold borrowed 11 billion yuan, nearly 16 times higher than the previous year's figure. Its debt-to asset ratio surged to 87.5% from 43.4%, according to a company financial report. That year, Kingold pledged 54.7 tons of gold for loans, 7.5 times higher than the previous year.

13.     The Caixin Article further pointed to certain litigation that had arisen from the

Counterfeit Collateral Scheme, including lawsuits brought by Minsheng, Dongguan, and

Chang'An against the Company's insurer, PICC P&C ("PICC," the "Insurer").

14.     On the release of this news, the price of the Company's stock fell from $1.12 per share[1]  at the close of trading on June 26, 2020, the prior trading day, to $0.85 per share at the close of trading on June 29, 2020, a loss in value of over 24%.

15.     Kingold has since been subjected to additional lawsuits brought by Creditors defrauded by the Counterfeit Collateral Scheme.

16.     On August 11, 2020, the Individual Defendants announced their intention to voluntarily delist the Company's common stock from NASDAQ. The delisting was effectuated on August 31, 2020, and the Company's shares have since traded on the OTC Markets.

17.     Then, on August 15, 2020, Friedman LLP ("Friedman"), resigned as the Company's independent auditing firm, effective immediately. In its resignation letter, the firm revealed that it had become aware of material information that had not been disclosed in the Company's financial statements for Kingold's 2016, 2017, and 2018 fiscal years, and that Friedman's prior audits of the Company's financial statements for those fiscal years should therefore no longer be relied upon. Friedman also indicated that the Individual Defendants "ha[d] not cooperated in attempting to substantiate this information," and consequently, Friedman had not been able to carry out a proper investigation of such matters.

18.     Kingold has also failed to timely file certain of its required periodic and annual reports, including its annual report on Form 10-K for the fiscal year ended December 31, 2019 (the "2019 10-K") and its quarterly report on Form 10-Q for the fiscal quarter ended March 31, 2020 (the "1Q20 10-Q"). As of September 9, 2020, Kingold has yet to file its 2019 10-K or its 1Q20 10-Q.

---

[1] The Company's share prices cited herein are adjusted to account for the Company's one-for-six reverse stock split effectuated in October 2019.

19.    During the Relevant Period, the Individual Defendants breached their fiduciary duties to Kingold by engaging in and causing the Company to engage in the Counterfeit Collateral Scheme, and by making a series of materially false and misleading statements and omissions regarding Kingold's business, operations, and prospects. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements to the public that failed to disclose, among other things, that: (1) the Individual Defendants fraudulently represent gilded copper bars as genuine gold to Lenders in order to obtain loans; (2) because Kingold's purported gold was actually gilded copper, the value of the gold assets reported in the Company's financial statements was improperly inflated; (3) Kingold had been a party to material litigation with various Lenders since at least late 2019; (4) as a result of the foregoing, Kingold would predictably be subjected to serious regulatory consequences, including an investigation by the PRC and delisting from the Shanghai Gold Exchange; (5) the Company failed to maintain internal controls; and (6) due to the foregoing, the Individual Defendants' public statements were materially false and misleading at all relevant times.

20.    The Individual Defendants also breached their fiduciary duties by failing to correct and/or causing the Company to fail to correct these false and misleading statements and omissions of material fact to the investing public.

21.    In further breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls,  and caused Kingold to fail to timely file its 1Q20 10-Q and the 2019 10-K with the SEC.

22.    The Individual Defendants' misconduct and breaches of fiduciary duty have caused the Company, along with its Chief Executive Officer ("CEO") and its former Chief Financial Officer ("CFO") to be named as defendants in two federal securities fraud class action lawsuits

pending in the United States District Court for the Eastern District of New York (the "Securities Class Actions"). Additionally, the Company has been subjected to the need to undertake internal investigations and the need to implement adequate internal controls over the Company's financial reporting, all of which will cost the Company millions of dollars going forward.

23.     Considering the breaches of fiduciary duty engaged in by the Individual Defendants, many of whom currently serve as Company directors, the directors' collective engagement in fraud and misconduct, the strong likelihood of the directors' liability in this derivative action and of the Company's CEO's liability in the Securities Class Actions, and in light of the directors not being disinterested and/or independent, a majority of Kingold's Board of Directors (the "Board") cannot consider a demand to commence litigation against themselves on behalf of Kingold with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9, Section 10(b) of the Exchange Act, 15. U.S.C. § 78j(b), and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), and raise a federal question pertaining to the claims made in the Securities Class Actions based on violations of the Exchange Act.

25.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

26.     Additionally, diversity jurisdiction is conferred by 28 U.S.C. § 1332. Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

27.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

28.     Venue is proper in this District because a substantial portion of the transactions and wrongs complained of herein occurred in this District, the Company and the Individual Defendants have conducted business in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

**PARTIES**

*Plaintiff*

29.     Plaintiff is a current shareholder of Kingold common stock, and has continuously held Kingold common stock since 2011. Plaintiff is a citizen of New York.

*Nominal Defendant Kingold*

30.     Kingold is a Delaware corporation, with its headquarters located at No. 8 Han Huang Road, Jiang'an District, Wuhan, Hubei Province, PRC, 430023. The Company's shares trade on the OTC Markets under the ticker symbol "KGJI."

*Defendant Zhihong Jia*

31.     Defendant Zhihong Jia ("Jia") founded Kingold, and he has served as the Kingold's CEO and as the Chairman of the Board since 2009.

32.     According to the Company's Schedule 14A filed with the SEC on November 18, 2019 (the "2019 Proxy Statement"), Defendant Jia was the beneficial owner of 2,809,234 shares of the Company's common stock as of November 14, 2019, which represented roughly 25.5% of the Company's outstanding stock on that date, making Defendant Jia a majority shareholder. As the price of the Company's common stock was $1.53 per share at close on November 14, 2019, Defendant Jia owned $4,298,265 worth of Company stock.

33.     Defendant Jia personally guaranteed over $1.402 billion worth of loans which named Kingold as a borrower. Kingold's current report on Form 8-K filed with the SEC on July 6, 2020 (the "July 6, 2020 8-K") stated that at least $1.177 billion of those loans remained unpaid.

34.     Defendant Jia received $175,000 in compensation from the Company during the fiscal year ended December 31, 2018, which consisted entirely of salary.

35.     Upon information and belief, Defendant Jia is a citizen of the PRC.

*Defendant Liu*

36.     Defendant Bin Liu ("Liu") is the Company's former CFO, serving in that role from April 2010 until he resigned on June 1, 2020.

37.     According to the 2019 Proxy Statement, Defendant Liu was the beneficial owner of 138,384 shares of the Company's common stock as of November 14, 2019. As the price of the Company's common stock was $1.53 per share at close on November 14, 2019, Defendant Liu owned $211,651 worth of Company stock.

38.     Defendant Liu received $135,000 in compensation from the Company during the fiscal year ended December 31, 2018, which consisted entirely of salary.

39.     Upon information and belief, Defendant Liu is a citizen of the PRC.

*Defendant Wang*

40.     Defendant Jun Wang ("Wang") is a current Company director, as well as the Company's General Manager, and has served in those roles since 2014.

41.     According to the 2019 Proxy Statement, Defendant Wang was the beneficial owner of 63,351 shares of the Company's common stock as of November 14, 2019. As the price of the Company's common stock was $1.53 per share at close on November 14, 2019, Defendant Wang owned $96,927 worth of Company stock.

42.     Defendant Wang received $22,355 in compensation from the Company from the Company during the fiscal year ended December 31, 2018.

43.     Upon information and belief, Defendant Wang is a citizen of the PRC.

### Defendant Chen

44.     Defendant Guang Chen ("Chen") is a current Company director, and has served in that role since June 2014. Defendant Chen also serves as the Chair of the Nominating Committee, and as a member of the Audit Committee and the Compensation Committee.

45.     Defendant Chen received $17,884 in compensation from the Company during the fiscal year ended December 31, 2018, which consisted entirely of fees earned or paid in cash.

46.     Upon information and belief, Defendant Chen is a citizen of the PRC.

### Defendant Wu

47.     Defendant Alice Io Wai Wu ("Wu") is a current Company director, and has served in that role since 2016. Defendant Wu also serves as the Chair of the Audit Committee, and as a member of the Compensation Committee and the Nominating Committee.

48.     Defendant Wu received $48,000 in compensation from the Company during the fiscal year ended December 31, 2018, which consisted entirely of fees earned or paid in cash.

49.     Upon information and belief, Defendant Wu is a citizen of the PRC.

### Defendant Xia

50.     Defendant Zhiyong Xia ("Xia") is a current Company director, and has served in that role since August 2016. Defendant Xia also serves as the Chair of the Compensation Committee, and as a member of the Audit Committee and the Nominating Committee.

51.     Upon information and belief, Defendant Xia is a citizen of the PRC.

## THE INDIVIDUAL DEFENDANTS' MISCONDUCT

### Background

52.     Kingold was founded in 1995 under the name "Vanguard Enterprises, Inc." In 1999, the Company rebranded itself under the name "Activeworlds.com, Inc.," and subsequently, to "Activeworlds, Corp." After selling certain of its business assets to its management in 2002, Kingold functioned as a shell company that laid dormant for a number of years, with no expenses or revenues. In 2009, Kingold became an indirect holding company for Wuhan Vogue-Show Jewelry Co., Limited (the "Operating Company").

53.     In 2002, Defendant Jia co-founded Wuhan Kingold Jewelry Co., Limited ("Wuhan Kingold"). Presently, Defendant Jia owns 92.48% of Wuhan Kingold, with the remaining 7.42% owned by three other, unidentified, PRC citizens.

54.     In 2009, the Operating Company entered into a series of agreements with Wuhan Kingold whereby 95.83% of Wuhan Kingold shareholders transferred their voting rights and their collective share of economic benefits to the Operating Company.  In 2011, the remaining Wuhan Kingold shareholders joined the agreement, giving the Operating Company total control of Wuhan Kingold and the right to all its economic benefits.

55.     After setting up the above-described indirect holding structure, the Company changed its name to Kingold, its present name.

56.     Historically, Kingold's business primarily consisted of producing gold jewelry under its own brand name and for other brands. Beginning in 2016, the Company expanded its business to include investing in gold as a commodity.

### The Counterfeit Collateral Scheme

57.     In 2016, the Company began obtaining loans secured by what the Individual Defendants represented to be gold, in order to finance the Company's investment activities. It is

presently unclear whether the gold transferred to the Creditors' possession as collateral was genuine or counterfeit at the time that the loans in question were made. According to one Creditor quoted in the Caixin Article, the gold was verified by third parties, transferred under supervision from the Creditor, the Company, and the Insurer, and had never been accessed until testing in late 2019 determined that it was counterfeit.

58.     Another source quoted in the Caixin Article asserted that local lenders would not deal with the Company because "we knew for years that [Defendant Jia] doesn't have much gold—all he has is copper."

59.     Some of these loans were secured by gold that had been leased by the Company from unspecified banks, which was then stored by the Lenders in the same manner as the gold that Kingold owned.

60.     In November 2017, Song Hao, the Chairman of Evergrowing when the Evergrowing-Kingold loans were originated, was placed under investigation and subsequently removed from this position. Song Hao may have been cognizant of the underlying fraud alleged herein, and his removal may have been in response to the fraud.

61.     According to the Caixin Article, in 2018, Defendant Jia purchased an equity stake in the Chinese government-owned Tri-Ring Corporation ("Tri-Ring"). The Caixin Article further alleged that substantial portions of the loans taken out by the Company were in fact used to support Defendant Jia's purchase of Tri-Ring. Tri-Ring is not disclosed as a related entity or in any other capacity in the Company's filings.

62.      Subsequently, after the Company defaulted on its loans in 2019, Evergrowing sued Kingold to obtain repayment for the loans. Evergrowing then attempted to liquidate the gold colalteral it was holding in connection with the loans, at which time Evergrowing reportedly

determined the collateral to be copper alloy underneath gold gilt. This information would not be publicized or reported in English-language media until the publication of the Caixin Article.

**False and Misleading Statements**

***March 15, 2018 10-K***

63.     The Company filed its annual report on Form 10-K for the fiscal year ended December 31, 2017 (the "2017 10-K") on March 15, 2018. The 2017 10-K was signed by Defendants Jia, Liu, Wang, Chen, Wu, and Xia.

64.     The 2017 10-K also contained certifications pursuant to Rule 13a-14(a) and 15d-14(a) under the Exchange Act and the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Jia and Liu attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

65.     The 2017 10-K stated the following regarding the Company's gold investments and loans:

> We pledged the gold leased from related party and part of our own gold inventory to meet the requirements of bank loans. The pledged gold will be available for sale upon the repayment of the bank loans. We classified these pledged gold as investments in gold, and carried at fair market value, with the unrealized gains and losses, included in the determination of comprehensive income and reported in shareholders' equity. The fair market value of the investments in gold is determined by quoted market prices at Shanghai Gold Exchange. Since the investments in gold are pledged for the bank loans, any material decrease in market value may negatively impact the loan covenants.
>
> *     *     *
>
> The Company also allocated significant portion of its inventories as investment in gold and pledged as collateral to secure loans from banks and financial institutions, so there is a risk that the Company is unable to utilize its inventories, and there could be a disruption in the Company's supply of gold which could decrease its production and shipping levels. In addition, the investment in gold may be deficient if the fair market value of the pledged gold in connection with the loans declines, then the Company may need to increase the pledged gold inventory for the loan collateral or increase restricted cash.

66.     The 2017 10-K stated the following regarding the Company's gold-backed loans

from various Creditors:

(u) Loans payable to Anxin Trust Co., Ltd

In January 2016, Wuhan Kingold signed a Collective Trust Loan Agreement with Anxin Trust Co., Ltd. ("Anxin Trust"). The agreement allows the Company to access of approximately $461.1 million (RMB 3 billion) within 60 months. Each individual loan will bear a fixed annual interest of 14.8% or 11% with various maturity dates from February 19, 2019 to October 12, 2019. The purpose of this trust loan is to provide working capital for the Company to purchase gold. The loan is secured by 15,450 kilograms of Au9999 gold in aggregate with carrying value of approximately $552.1 million (RMB 3.6 billion). The loan is also guaranteed by the CEO and Chairman of the Company. As of December 31, 2017, the Company received full amount from the loan. The Company also made a restricted deposit of approximately $4.6 million (RMB 30 million) to secure these loans. The deposit will be refunded when the loan is repaid upon maturity.

*        *        *

(v) Loans payable to Chang'An Trust

On March 9, 2016, Wuhan Kingold entered into a Trust Loan Contract with Chang'An International Trust Co., Ltd. ("Chang'An Trust"). The agreement allows the Company to access a total of approximately $46.1 million (RMB 300 million) for the purpose of working capital needs. During the year ended December 31, 2017, the Company fully repaid the loan. As of December 31, 2017, the restricted deposit was refunded to the Company.

In September 2017, Wuhan Kingold entered into a new Trust Loan Contract with Chang'An Trust. The agreement allows the Company to access a total of approximately $153.7 million (RMB 1 billion) for the purpose of working capital needs. The loan bears a fixed annual interest of 10% with a term of 24 months and is secured by 4,784 kilograms of Au9999 gold in aggregate with carrying value of approximately $172.7 million (RMB 1.1 billion). The loan is also guaranteed by the CEO and Chairman of the Company. As of December 31, 2017, the Company received full amount from the loan. The Company also made a restricted deposit of approximately $1.5 million (RMB 10 million) to secure these loans. The deposit will be refunded when the loan is repaid upon maturity.

The Company paid approximately $1.7 million (RMB 11.0 million) as loan origination fee for obtaining the new loan. The loan origination fee was recorded as deferred financing cost against the loan balance. For the year ended December 31, 2017, approximately $0.1 million (RMB 0.8 million) deferred financing cost was amortized. As of December 31, 2017, the unamortized deferred financing cost related to obtaining this loan was approximately $1.6 million (RMB 10.2 million).

*        *        *

(e) Loans payable to Evergrowing Bank - Yantai Huangshan Road Branch

14

From February 24, 2016 to March 24, 2016, Wuhan Kingold signed ten Loan Agreements with the Yantai Huangshan Road Branch of Evergrowing Bank for loans of approximately $153.7 million (RMB 1 billion) in aggregate. The purpose of the loans is for purchasing gold. The terms of loans are two years and bear fixed interest of 7% per year. The loans are secured by 5,550 kilograms of Au9999 gold in aggregate with carrying value of approximately $198.3 million (RMB 1.3 billion) and are guaranteed by the CEO and Chairman of the Company. Based on the loan repayment plan as specified in the loan agreements, approximately $153,695 (RMB 1 million) was repaid in August 2016, approximately $153,695 (RMB 1 million) was repaid on February 23, 2017 and another $153,695 (RMB 1 million) was repaid on August 23, 2017. The repayment of the loans may be accelerated under certain conditions, including upon a default of principal or interest payment when due, breach of representations or warranties, certain cross-defaults, upon the occurrence of certain material events affecting the financial viability of Wuhan Kingold, and other customary conditions.

The Company subsequently repaid $76.4 million (RMB 497 million) to Evergrowing bank Yantai Huangshan Road Branch upon maturity. For the remaining $76.8 million (RMB 500 million) to be matured on March 9, 2018 and March 21, 2018, respectively, the Company subsequently entered into a loan extension agreement with the bank to extend the loan borrowing period for additional seven months until October 2018, with the same interest rate of 7% per year.

\*        \*        \*

(a) Loan payable to Minsheng Trust

A Trust Loan Agreement with the Minsheng Trust was fully repaid upon maturity and the pledged gold and restricted deposit were released and refunded upon the repayment.

\*        \*        \*

(n) Loan payable to Minsheng Trust

On June 24, 2016, Wuhan Kingold entered into a loan agreement with Minsheng Trust, with an aggregate amount of approximately $30.7 million (RMB 200 million), with a maturity date of June 22, 2018. During the year ended December 31, 2017, the Company fully repaid the loan. The pledged gold and restricted deposit were released and refunded upon the repayment.

The Company paid approximately $0.8 million (RMB 5.3 million) as loan origination fee for obtaining the loan. For the years ended December 31, 2017 and 2016, approximately $0.6 million (RMB 3.9 million) and $0.2 million (RMB 1.4 million) deferred financing cost was amortized, respectively. As of December 31, 2017, the deferred financing cost was fully amortized.

67.    The above-referenced statements in the 2017 10-K were false and misleading because they failed to disclose that Kingold's loans had been secured with gilded copper that the Individual Defendants had represented as genuine gold.

68.    The 2017 10-K also included the following consolidated balance sheet:

**KINGOLD JEWELRY, INC.**
**Five-Year Summary of Selected Financial Data**
**(in millions, except for the per share data)**

| | As of and for the years ended December 31, | | | | |
|---|---|---|---|---|---|
| | **2017** | **2016** | **2015** | **2014** | **2013** |
| **Consolidated Statement of Operations Data:** | | | | | |
| Net sales | $   2,009.7 | $   1,420.6 | $   1,000.1 | $   1,107.5 | $   1,189.9 |
| Cost of sales | (1,809.8) | (1,274.2) | (961.8) | (1,031.3) | (1,142.9) |
| Gross profit | 199.9 | 146.4 | 38.3 | 76.2 | 47.0 |
| Operating expenses | (13.9) | (12.4) | (8.3) | (10.6) | (6.5) |
| Other expenses, net | (150.6) | (8.4) | (2.1) | (1.5) | (1.0) |
| Income tax provision | (9.2) | (32.6) | (6.3) | (16.8) | (11.2) |
| Net income | 26.2 | 92.9 | 21.6 | 47.3 | 28.3 |
| **Share date** | | | | | |
| Weighted average shares - basic | 66,050,498 | 65,991,487 | 65,963,502 | 65,918,768 | 63,495,520 |
| Weighted average shares - diluted | 66,472,046 | 66,337,129 | 65,963,502 | 66,007,075 | 63,902,912 |
| **Per share data** | | | | | |
| Earnings per share - basic | $   0.40 | $   1.41 | $   0.33 | $   0.72 | $   0.45 |
| Earnings per share – dilute | $   0.39 | $   1.40 | $   0.33 | $   0.72 | $   0.44 |
| **Selected Consolidated Balance Sheet Data:** | | | | | |
| Cash | $   5.0 | $   21.3 | $   3.1 | $   1.3 | $   2.3 |
| Restricted cash – current | 5.5 | 52.8 | 26.6 | 14.8 | 12.7 |
| Restricted cash – non-current | 7.4 | 7.6 | - | - | - |
| Inventory | 135 | 119.4 | 298.3 | 212.4 | 174.4 |
| Investments in gold - current | 1,562.9 | 281.9 | - | - | - |
| Investments in gold – non-current | 957.1 | 1,493.9 | - | - | - |
| Total assets | $   3,042.3 | $   2,262.4 | $   469.6 | $   311.7 | $   301.1 |
| Short term loans | 962.1 | 234.7 | 55.5 | 45.1 | 49.6 |
| Long term loans | 789.4 | 1,224.8 | 30.8 | 3.7 | 29.0 |
| Related parties loans – short term | 307.4 | - | - | - | - |
| Related parties loans – long term | 567.8 | 460.8 | - | - | - |
| Total liabilities | $   2,652.1 | $   1,979.9 | $   203.9 | $   53.5 | $   86.2 |
| Total stockholders' equity | $   390.2 | $   282.5 | $   265.7 | $   258.2 | $   214.9 |

69.     The above-referenced consolidated balance sheet in the 2017 10-K was false and misleading because it overstated Kingold's assets due to the Company's misrepresentation of the worth of its gold investments and the ensuing impact on the Company's loans.

***May 10, 2018 10-Q***

70.     Kingold filed its quarterly report on Form 10-Q for the fiscal quarter ended March 31, 2018 (the "1Q18 10-Q") on May 10, 2018. The 1Q18 10-Q was signed by Defendants Jia and Liu.

71.     The 1Q18 10-Q also contained SOX certifications signed by Defendants Jia and Liu attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

72.     The 1Q18 10-Q included the following consolidated balance sheet:

**KINGOLD JEWELRY, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS**
**(IN U.S. DOLLARS)**
**(UNAUDITED)**

|  | March 31, 2018 (Unaudited) | December 31, 2017 |
|---|---|---|
| **ASSETS** | | |
| Cash | $        999,156 | $     4,997,125 |
| Restricted cash | 6,691,929 | 5,534,551 |
| Accounts receivable | - | 768,167 |
| Inventories | 306,512,889 | 135,042,713 |
| Investments in gold | 1,177,796,726 | 1,562,943,153 |
| Other current assets and prepaid expenses | 719,778 | 100,592 |
| Value added tax recoverable | 328,973,748 | 353,732,758 |
| Total current assets | 1,821,694,226 | 2,063,119,059 |
| | | |
| Property and equipment, net | 7,148,280 | 7,299,643 |
| Restricted cash | 8,928,941 | 7,392,721 |
| Investments in gold | 1,085,565,622 | 957,124,267 |
| Other assets | 312,927 | 302,072 |
| Deferred income tax assets | 12,953,934 | 6,677,675 |
| Land use right | 442,355 | 429,915 |
| Total long-term assets | 1,115,352,059 | 979,226,293 |

| | | |
|---|---:|---:|
| **TOTAL ASSETS** | $2,937,046,285 | $3,042,345,352 |

| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
|---|---:|---:|
| **CURRENT LIABILITIES** | | |
| Short term loans | $  906,862,905 | $  962,101,746 |
| Other payables and accrued expenses | 19,844,109 | 18,913,863 |
| Related party loan | 79,608,961 | 307,389,647 |
| Due to related party | 3,102,653 | 2,630,301 |
| Income tax payable | 3,297,669 | 1,208,742 |
| Other taxes payable | 2,264,914 | 2,615,463 |
| Total current liabilities | 1,014,981,211 | 1,294,859,762 |
| Related party loans | 632,751,640 | 567,843,066 |
| Long term loans | 890,643,755 | 789,410,137 |
| **TOTAL LIABILITIES** | 2,538,376,606 | 2,652,112,965 |
| **COMMITMENTS AND CONTINGENCIES** | | |
| **EQUITY** | | |
| Preferred stock, $0.001 par value, 500,000 shares authorized, none issued or   outstanding as of March 31, 2018 and December 31, 2017 | - | - |
| Common stock $0.001 par value, 100,000,000 shares authorized, 66,113,502   shares issued and outstanding as of March 31, 2018 and December 31, 2017 | 66,113 | 66,113 |
| Additional paid-in capital | 80,382,813 | 80,377,449 |
| Retained earnings | | |
| Unappropriated | 316,901,535 | 303,666,611 |
| Appropriated | 967,543 | 967,543 |
| Accumulated other comprehensive income, net of tax | 351,675 | 5,154,671 |
| Total Equity | 398,669,679 | 390,232,387 |
| | | |
| **TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY** | $2,937,046,285 | $3,042,345,352 |

73.     The 1Q18 10-Q also included the following table of inventories:

**KINGOLD JEWELRY, INC.**
**NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS**
**(UNAUDITED)**

**NOTE 3 – INVENTORIES**

Inventories as of March 31, 2018 and December 31, 2017 consisted of the following:

| | As of | |
|---|---:|---:|
| | **March 31, 2018** | **December 31, 2017** |
| | **(unaudited)** | |
| Raw materials (A) | $       177,684,115 | $                     - |
| Work-in-progress (B) | 81,470,668 | 90,406,021 |
| Finished goods (C) | 47,358,106 | 44,636,692 |
| Total inventory | $       306,512,889 | $       135,042,713 |

(A)  Included 4,751,394 grams of Au9999 gold as of March 31, 2018 and Nil Au9999 gold as of December 31, 2017.

74.     The above-referenced consolidated balance sheet and table of inventories contained in the 1Q18 10-Q were false and misleading because they misrepresented the worth of the Company's gold assets and investments in gold, and failed to disclose that the Company's loans had been secured with counterfeit gold.

### August 9, 2018 10-Q

75.     Kingold filed its quarterly report on Form 10-Q for the fiscal quarter ended June 30, 2018 (the "2Q18 10-Q") on August 9, 2018. The 2Q18 10-Q was signed by Defendants Jia and Liu.

76.     The 2Q18 10-Q also contained SOX certifications signed by Defendants Jia and Liu attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

77.     The 2Q18 10-Q included the following consolidated balance sheet:

**KINGOLD JEWELRY, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS**
**(IN U.S. DOLLARS)**
**(UNAUDITED)**

|  | June 30, 2018 | December 31, 2017 |
|---|---|---|
| **ASSETS** | | |
| Cash | $      240,453 | $    4,997,125 |
| Restricted cash | 6,965,467 | 5,534,551 |
| Accounts receivable | - | 768,167 |
| Inventories | 150,437,622 | 135,042,713 |
| Investments in gold | 1,185,042,807 | 1,562,943,153 |
| Other current assets and prepaid expenses | 250,183 | 100,592 |
| Value added tax recoverable | 274,033,622 | 353,732,758 |
| Total current assets | 1,616,970,154 | 2,063,119,059 |
| | | |
| Property and equipment, net | 6,517,129 | 7,299,643 |
| Restricted cash | 7,600,532 | 7,392,721 |
| Investments in gold | 908,899,905 | 957,124,267 |
| Other assets | 296,897 | 302,072 |

| | | |
|---|---:|---:|
| Deferred income tax assets | 18,545,561 | 6,677,675 |
| Land use right | 416,840 | 429,915 |
| Total long-term assets | 942,276,864 | 979,226,293 |
| **TOTAL ASSETS** | $2,559,247,018 | $3,042,345,352 |

**LIABILITIES AND STOCKHOLDERS' EQUITY**

**CURRENT LIABILITIES**

| | | |
|---|---:|---:|
| Short term loans | $ 908,635,791 | $ 962,101,746 |
| Other payables and accrued expenses | 19,906,196 | 18,913,863 |
| Related party loan | 75,530,983 | 307,389,647 |
| Due to related party | 3,420,269 | 2,630,301 |
| Income tax payable | 4,015,473 | 1,208,742 |
| Other taxes payable | 2,496,472 | 2,615,463 |
| Total current liabilities | 1,014,005,184 | 1,294,859,762 |
| Related party loans | 414,034,451 | 567,843,066 |
| Long term loans | 758,141,473 | 789,410,137 |
| **TOTAL LIABILITIES** | 2,186,181,108 | 2,652,112,965 |
| **COMMITMENTS AND CONTINGENCIES** | | |
| **EQUITY** | | |
| Preferred stock, $0.001 par value, 500,000 shares authorized, none issued or outstanding as of June 30, 2018 and December 31, 2017 | - | - |
| Common stock $0.001 par value, 100,000,000 shares authorized, 66,113,502 shares issued and outstanding as of June 30, 2018 and December 31, 2017 | 66,113 | 66,113 |
| Additional paid-in capital | 80,388,177 | 80,377,449 |
| Retained earnings | | |
| Unappropriated | 330,465,332 | 303,666,611 |
| Appropriated | 967,543 | 967,543 |
| Accumulated other comprehensive income (loss), net of tax | (38,821,255) | 5,154,671 |
| Total Equity | 373,065,910 | 390,232,387 |
| | | |
| **TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY** | $2,559,247,018 | $3,042,345,352 |

78.     The 2Q18 10-Q also included the following table of inventories:

**NOTE 3 – INVENTORIES**

Inventories as of June 30, 2018 and December 31, 2017 consisted of the following:

| | | As of | |
|---|---:|---:|---:|
| | | **June 30, 2018** | **December 31, 2017** |
| | | **(unaudited)** | |
| Raw materials (A) | $ | 36,485,384 | $ - |
| Work-in-progress (B) | | 71,331,336 | 90,406,021 |
| Finished goods (C) | | 42,620,902 | 44,636,692 |
| Total inventory | $ | 150,437,622 | $ 135,042,713 |

(A) Included 1,030,355 grams of Au9999 gold as of June 30, 2018 and Nil Au9999 gold as of December 31, 2017.
(B) Included 2,020,544 grams of Au9999 gold June 30, 2018 and 2,508,182 grams of Au9999 gold as of December 31, 2017.
(C) Included 1,199,154 grams of Au9999 gold June 30, 2018 and 1,231,586 grams of Au9999 gold as of December 31, 2017.

79.     The above-referenced consolidated balance sheet and table of inventories contained in the 2Q18 10-Q were false and misleading because they misrepresented the worth of the Company's gold assets and investments in gold, and failed to disclose that the Company's loans had been secured with counterfeit gold.

### November 14, 2018 10-Q

80.     Kingold filed its quarterly report on Form 10-Q for the fiscal quarter ended September 30, 2018 (the "3Q18 10-Q") on November 14, 2018. The 3Q18 10-Q was signed by Defendants Jia and Liu.

81.     The 3Q18 10-Q also contained SOX certifications signed by Defendants Jia and Liu attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

82.     The 3Q18 10-Q included the following consolidated balance sheet:

**KINGOLD JEWELRY, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS**
**(IN U.S. DOLLARS)**
**(UNAUDITED)**

|  | September 30, 2018 | December 31, 2017 |
|---|---|---|
| **ASSETS** | | |
| Cash | $ 13,245,436 | $ 4,997,125 |
| Restricted cash | 6,567,855 | 5,534,551 |
| Accounts receivable | 198,214 | 768,167 |
| Inventories | 147,264,405 | 135,042,713 |
| Investments in gold | 922,084,336 | 1,562,943,153 |
| Other current assets and prepaid expenses | 808,809 | 100,592 |
| Value added tax recoverable | 254,820,263 | 353,732,758 |
| Total current assets | 1,344,989,318 | 2,063,119,059 |
|  | | |
| Property and equipment, net | 5,903,782 | 7,299,643 |
| Restricted cash | 8,927,100 | 7,392,721 |
| Investments in gold | 1,071,005,836 | 957,124,267 |
| Other assets | 286,155 | 302,072 |
| Deferred income tax assets | 22,054,343 | 6,677,675 |

| | | |
|---|---:|---:|
| Land use right | 399,007 | 429,915 |
| Total long-term assets | 1,108,576,223 | 979,226,293 |
| **TOTAL ASSETS** | $2,453,565,541 | $3,042,345,352 |

### LIABILITIES AND STOCKHOLDERS' EQUITY

**CURRENT LIABILITIES**

| | | |
|---|---:|---:|
| Short term loans | $ 621,518,946 | $ 962,101,746 |
| Other payables and accrued expenses | 18,845,062 | 18,913,863 |
| Related party loan | 72,798,218 | 307,389,647 |
| Due to related party | 3,592,726 | 2,630,301 |
| Income tax payable | 1,855,002 | 1,208,742 |
| Other taxes payable | 2,818,412 | 2,615,463 |
| Total current liabilities | 721,428,366 | 1,294,859,762 |
| Related party loans | 451,657,343 | 567,843,066 |
| Long term loans | 926,174,267 | 789,410,137 |
| **TOTAL LIABILITIES** | 2,099,259,976 | 2,652,112,965 |
| **COMMITMENTS AND CONTINGENCIES** | | |
| **EQUITY** | | |
| Preferred stock, $0.001 par value, 500,000 shares authorized, none issued or outstanding as of September 30, 2018 and December 31, 2017 | - | - |
| Common stock $0.001 par value, 100,000,000 shares authorized, 66,113,502 shares issued and outstanding as of September 30, 2018 and December 31, 2017 | 66,113 | 66,113 |
| Additional paid-in capital | 80,393,541 | 80,377,449 |
| Retained earnings | | |
| Unappropriated | 343,712,836 | 303,666,611 |
| Appropriated | 967,543 | 967,543 |
| Accumulated other comprehensive income (loss), net of tax | (70,834,468) | 5,154,671 |
| Total Equity | 354,305,565 | 390,232,387 |
| | | |
| **TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY** | $2,453,565,541 | $3,042,345,352 |

83.    The 3Q18 10-Q also included the following table of inventories:

**NOTE 3 – INVENTORIES**

Inventories as of September 30, 2018 and December 31, 2017 consisted of the following:

| | As of | |
|---|---|---|
| | September 30, 2018 | December 31, 2017 |
| | (unaudited) | |
| Raw materials (A) | $    32,787,260 | $              - |
| Work-in-progress (B) | 71,524,413 | 90,406,021 |
| Finished goods (C) | 42,952,732 | 44,636,692 |
| Total inventory | $  147,264,405 | $  135,042,713 |

(A) Included 964,769 grams of Au9999 gold as of September 30, 2018 and Nil Au9999 gold as of December 31, 2017.
(B) Included 2,110,166 grams of Au9999 gold as of September 30, 2018 and 2,508,182 grams of Au9999 gold as of December 31, 2017.
(C) Included 1,258,327 grams of Au9999 gold as of September 30, 2018 and 1,231,586 grams of Au9999 gold as of December 31, 2017.

84.     The above-referenced consolidated balance sheet and table of inventories contained in the 3Q18 10-Q were false and misleading because they misrepresented the worth of the Company's gold assets and investments in gold, and failed to disclose that the Company's loans had been secured with counterfeit gold.

### *November 16, 2018 Proxy Statement*

85.     On November 16, 2018, Kingold filed a Schedule 14A with the SEC (the "2018 Proxy Statement") pursuant to Section 14(a) of the Exchange Act. The 2018 Proxy Statement was solicited by Defendants Jia, Wang, Chen, Wu, and Xia.[3]

86.     Regarding the Company's Code of Business Conduct and Ethics (the "Code of Ethics"), the 2018 Proxy Statement stated that Kingold had "adopted a code of business conduct and ethics that applies to all of our employees, officers and directors, including those officers responsible for financial reporting." The 2018 Proxy Statement was false and misleading because the Code of Ethics was not followed, as evidenced by the numerous false and misleading statements described herein and the Individual Defendants' participation in the Counterfeit Collateral Scheme.

87.     The 2018 Proxy Statement also failed to disclose, *inter alia*, that: (1) the Individual Defendants fraudulently represent gilded copper bars as genuine gold to Lenders in order to obtain loans; (2) because Kingold's purported gold was actually gilded copper, the value of the gold assets reported in the Company's financial statements was improperly inflated; (3) as a result of the foregoing, Kingold would predictably be subjected to material litigation with Creditors as well as

---

[3] Plaintiff's allegations with respect to the misleading statements in the 2018 Proxy Statement are based solely on negligence; they are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants, and they do not allege, and do not sound in, fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these allegations and related claims.

serious regulatory consequences, including an investigation by the PRC and delisting from the Shanghai Gold Exchange; (4) the Company failed to maintain internal controls; and (5) due to the foregoing, the Individual Defendants' public statements were materially false and misleading at all relevant times.

### *April 2, 2019 10-K*

88.     The Company filed its annual report on Form 10-K for the fiscal year ended December 31, 2018 (the "2018 10-K") on April 2, 2019. The 2018 10-K was signed by Defendants Jia, Liu, Wang, Chen, Wu, and Xia.

89.     The 2018 10-K also contained SOX certifications signed by Defendants Jia and Liu attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

90.     The 2018 10-K stated the following regarding the Company's gold-backed loans from various Creditors:

> We pledged the gold leased from related party and part of our own gold inventory to meet the requirements of bank loans. The pledged gold will be available for sale upon the repayment of the bank loans. We classified these pledged gold as investments in gold, and carried at fair market value, with the unrealized gains and losses, included in the determination of comprehensive income and reported in shareholders' equity. The fair market value of the investments in gold is determined by quoted market prices at Shanghai Gold Exchange. Since the investments in gold are pledged for the bank loans, any material decrease in market value may negatively impact the loan covenants.
>
> *        *        *
>
> The Company also allocated significant portion of its inventories as investment in gold and pledged as collateral to secure loans from banks and financial institutions, so there is a risk that the Company is unable to utilize its inventories, and there could be a disruption in the Company's supply of gold which could decrease its production and shipping levels. In addition, the investment in gold may be deficient if the fair market value of the pledged gold in connection with the loans declines, then the Company may need to increase the pledged gold inventory for the loan collateral or increase restricted cash.
>
> *        *        *

(l) Loans payable to Anxin Trust Co., Ltd

In January 2016, Wuhan Kingold signed a Collective Trust Loan Agreement with Anxin Trust Co., Ltd. ("Anxin Trust"). The agreement allowed the Company to access of approximately $436.2 million (RMB 3 billion) within 60 months. Each individual loan will bear a fixed annual interest of 14.8% or 11% with various maturity dates from February 19, 2019 to October 12, 2019. The purpose of this trust loan was to provide working capital for the Company to purchase gold. The loan is secured by 15,450 kilograms of Au9999 gold in aggregate with carrying value of approximately $522.3   million (RMB 3.6 billion). The loan is also guaranteed by the CEO and Chairman of the Company. As of December 31, 2018, the Company received full amount from the loan.

During the year ended December 31, 2018, the Company repaid approximately $81.4 million (RMB 0.56 billion), which resulted in an outstanding balance of approximately $354.8 million (RMB 2.44 billion) as of December 31, 2018 reported as short term loans. The Company also made a restricted deposit of approximately $3.5 million (RMB 24 million) to secure the rest of these loans. The deposit will be refunded when the loan is repaid upon maturity. In February and March 2019, the Company subsequently made repayments total of approximately $24 million (RMB 165 million) and extended the loans of approximately $18.5 million (RMB 127 million) which originally due on March 29, 2019 to May 17, 2019.

\*        \*        \*

(o) Loans payable to Chang'An Trust

In September 2017, Wuhan Kingold entered into a new Trust Loan Contract with Chang'An Trust. The agreement allows the Company to access a total of approximately $145.4 million (RMB 1 billion) for the purpose of working capital needs. The loan bears a fixed annual interest of 10% with a term of 24 months and is secured by 4,784 kilograms of Au9999 gold in aggregate with carrying value of approximately $163.4 million (RMB 1.1 billion). The loan is also guaranteed by the CEO and Chairman of the Company. As of December 31, 2018, the Company received full amount from the loan. The Company also made a restricted deposit of approximately $1.5 million (RMB 10 million) to secure these loans. The deposit will be refunded when the loan is repaid upon maturity. On September 30, 2018, the Company made repayment of approximately $2.9 million (RMB 20 million). On October 31, 2018, the Company made additional repayment of approximately $25.9 million (RMB 178.2 million) to Chang'An Trust. As of December 31, 2018, the balance of loans from Chang'An Trust was approximately $116.6 (RMB 801.9 million).

\*        \*        \*

(x) Loans payable to Dongguan Trust

In July 2018, Wuhan Kingold entered into a gold income rights transfer and repurchase agreement (the "Agreement") with Dongguan Trust. The Agreement allows the Company to obtain no more than approximately $145.4 million (RMB 1 billion) to exchange the

income earning rights of the Company. The Company committed to buy back the rights and repay the proceeds received, and shall pay a fixed interest of 11% over a term of 18 months. The Company determined that this Agreement is essentially a loan agreement due to the nature of this transaction. This loan is secured by 4,974 kilograms of Au9999 gold in aggregate with carrying value of approximately $165.8 million (RMB 1,140 million). The loan is also guaranteed by the CEO and Chairman of the Company. The Company also made a restricted deposit of approximately $1.5 million (RMB 10 million) to secure the loan. The deposit will be refunded when the loan is repaid upon maturity.

The Company paid approximately $2.2 million (RMB 15 million) as loan origination fee for obtaining this loan. The loan origination fee was recorded as deferred financing cost against the loan balance. For year ended December 31, 2018, approximately $0.6 million (RMB 3.9 million) deferred financing cost was amortized.

*     *     *

(c) Loans payable to Evergrowing Bank – Yantai Huanshan Road Branch

From February 24, 2016 to March 24, 2016, Wuhan Kingold signed ten Loan Agreements with the Yantai Huangshan Road Branch of Evergrowing Bank for loans of approximately $145.4 million (RMB 1 billion) in aggregate. The purpose of the loans was for purchasing gold. The terms of loans are two years and bear fixed interest of 4.75% per year. Based on the loan repayment plan as specified in the loan agreements, $145,400 (RMB 1 million) was repaid in August 2016, $145,400 (RMB 1 million) was repaid on February 23, 2017 and another $145,400 (RMB 1 million) was repaid in August 23, 2017. The Company repaid approximately $72.3 million (RMB 497 million) to Evergrowing bank Yantai Huangshan Road Branch upon maturity.

For the remaining balance of approximately $72.7 million (RMB 500 million), the Company entered into a loan extension agreement with the bank to extend the loan borrowing period for additional seven months until October 2018, with the new interest rate of 6.5% per year. The loans are secured by 2,735 kilograms of Au9999 gold in aggregate with carrying value of approximately $92.5 million (RMB 635.9 million) and are guaranteed by the CEO and Chairman of the Company. Upon the maturity of these loans, the Company entered into a series of supplemental agreements with Yantai Huanshan Road Branch of Evergrowing Bank to extend the term of the loan for additional 12 months.

*     *     *

(n) Loan payable to Minsheng Trust (new)

On October 10, 2018, the Company entered into a Trust Loan Contract in the amount of no more than approximately $145.4 million (RMB 1.0 billion) with China Minsheng Trust Co., Ltd. ("Minsheng Trust"). The purpose of the trust loan is to supplement liquidity needs. The Trust Loan will be issued in installments. Each installment of the Trust Loan has a 12-month term, and the period from issuance date of the first installment to the expiration date of the last installment shall not exceed 18 months. The Trust Loan bears

interest at a fixed annual rate of 10.5%. The loan is secured by 5,356 kilograms of Au9999 gold in aggregate with carrying value of approximately $181.9 million (RMB 1.3 billion). The loan is also guaranteed by the CEO and Chairman of the Company. As of December 31, 2018, the Company received the full amount from the loan.

\*       \*       \*

(p) Loan payable to Minsheng Trust

On December 26, 2017, the Company entered into a Trust Loan Contract in the amount of no more than approximately $218.1 million (RMB 1.5 billion) with China Minsheng Trust Co., Ltd. ("Minsheng Trust"). The purpose of the trust loan is to supplement liquidity needs. The Trust Loan will be issued in installments. Each installment of the Trust Loan has a 24-month term, and the period from issuance date of the first installment to the expiration date of the last installment shall not exceed 30 months. The Trust Loan bears interest at a fixed annual rate of 9.2%. The loan is secured by 7,887 kilograms of Au9999 gold in aggregate with carrying value of approximately $270.2 million (RMB 1.9 billion). The loan is also guaranteed by the CEO and Chairman of the Company. The Company made a restricted deposit of approximately $2.2 million (RMB 15 million) to secure these loans. The deposit will be refunded when the loan is repaid upon maturity. As of December 31, 2018, the Company received full amount from the loan.

The Company paid approximately $7.8 million (RMB 53.5 million) as loan origination fee for obtaining this loan. The loan origination fee was recorded as deferred financing cost against the loan balance. For the year ended December 31, 2018 approximately $4.0 million (RMB 26.6 million) deferred financing cost was amortized.

91.     The above-referenced statements in the 2018 10-K were false and misleading because they failed to disclose that Kingold's loans had been secured with gilded copper that the Individual Defendants had represented as genuine gold.

92.     The 2018 10-K also stated, with respect to legal proceedings facing the Company, that "[w]e are not currently a party to any litigation the outcome of which, if determined adversely to us, would individually or in the aggregate be reasonably expected to have a material adverse effect on our business, operating results, cash flows or financial condition."

93.     The above-referenced statement in the 2018 10-K was false and misleading because it failed to disclose that the Company was in fact involved in material litigation with Evergrowing arising out of the Company's default on its loans and the subsequent discovery of the Counterfeit Collateral Scheme.

94.     The 2018 10-K also included the following consolidated balance sheet:

KINGOLD JEWELRY, INC.
CONSOLIDATED BALANCE SHEETS
(IN U.S. DOLLARS)

| | December 31, 2018 | December 31, 2017 |
|---|---|---|
| **ASSETS** | | |
| Cash | $         233,391 | $    4,997,125 |
| Restricted cash | 4,798,185 | 5,534,551 |
| Accounts receivable | 451,059 | 768,167 |
| Inventories | 127,034,673 | 135,042,713 |
| Investments in gold | 1,593,557,391 | 1,562,943,153 |
| Other current assets and prepaid expenses | 87,590 | 100,592 |
| Value added tax recoverable | 259,582,324 | 353,732,758 |
| Total current assets | 1,985,744,613 | 2,063,119,059 |
| Property and equipment, net | 5,395,330 | 7,299,643 |
| Restricted cash | 7,766,372 | 7,392,721 |
| Investments in gold | 700,225,896 | 957,124,267 |
| Other assets | 285,768 | 302,072 |
| Deferred income tax assets | - | 6,677,675 |
| Land use right | 395,719 | 429,915 |
| Total long-term assets | 714,069,085 | 979,226,293 |
| **TOTAL ASSETS** | $2,699,813,698 | $3,042,345,352 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| **CURRENT LIABILITIES** | | |
| Short term loans | $1,034,947,774 | $   962,101,746 |
| Other payables and accrued expenses | 15,749,564 | 18,913,863 |
| Related party loan | 72,699,779 | 307,389,647 |
| Due to related party, shareholder | 3,976,742 | 2,630,301 |
| Income tax payable | 18,504,197 | 1,208,742 |
| Other taxes payable | 2,577,102 | 2,615,463 |
| Total current liabilities | 1,148,455,158 | 1,294,859,762 |
| Deferred income tax liability | 24,218,911 | - |
| Related party loans | 373,327,862 | 567,843,066 |
| Long term loans | 515,477,020 | 789,410,137 |
| **TOTAL LIABILITIES** | 2,061,478,951 | 2,652,112,965 |
| **COMMITMENTS AND CONTINGENCIES** | | |
| **EQUITY** | | |
| Preferred stock, $0.001 par value, 500,000 shares authorized, none issued or   outstanding as of December 31, 2018 and 2017 | - | - |
| Common stock $0.001 par value, 100,000,000 shares authorized, 66,113,502   shares issued and outstanding as of December 31, 2018 and 2017 | 66,113 | 66,113 |
| Additional paid-in capital | 224,292,907 | 80,377,449 |
| Retained earnings | | |
| Unappropriated | 353,213,325 | 303,666,611 |
| Appropriated | 967,543 | 967,543 |

| | | |
|---|---|---|
| Accumulated other comprehensive income, net of tax | 59,794,859 | 5,154,671 |
| Total Equity | 638,334,747 | 390,232,387 |
| | | |
| **TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY** | $2,699,813,698 | $3,042,345,352 |

95.     The above-referenced consolidated balance sheet in the 2018 10-K was false and misleading because it overstated Kingold's assets due to the Company's misrepresentation of the worth of its gold investments and the ensuing impact on the Company's loans.

### *May 15, 2019 10-Q*

96.     Kingold filed its quarterly report on Form 10-Q for the fiscal quarter ended March 31, 2019 (the "1Q19 10-Q") on May 15, 2019. The 1Q19 10-Q was signed by Defendants Jia and Liu.

97.     The 1Q19 10-Q also contained SOX certifications signed by Defendants Jia and Liu attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

98.     Regarding legal proceedings involving the Company, the 1Q19 10-Q stated the following:

**Item 1. Legal Proceedings**

From time to time, we may be subject to legal proceedings and claims in the ordinary course of business. We are not currently a party to any litigation the outcome of which, if determined adversely to us, would individually or in the aggregate be reasonably expected to have a material adverse effect on our business, operating results, cash flows or financial condition. Our business may also be adversely affected by risks and uncertainties not presently known to us or that we currently believe to be immaterial. If any of the events contemplated by the following discussion of risks should occur, our business, prospects, financial condition and results of operations may suffer.

99.     The above-referenced statement in the 1Q19 10-Q was false and misleading because it failed to disclose Evergrowing's lawsuit to obtain repayment of its loans to Kingold.

100.     The 1Q19 10-Q included the following consolidated balance sheet:

**KINGOLD JEWELRY, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS**
**(IN U.S. DOLLARS)**
**(UNAUDITED)**

| | March 31, 2019 | December 31, 2018 |
|---|---|---|
| | (Unaudited) | |
| **ASSETS** | | |
| Cash | $        926,028 | $        233,391 |
| Restricted cash | 15,705,478 | 4,798,185 |
| Accounts receivable | - | 451,059 |
| Inventories | 163,848,955 | 127,034,673 |
| Investments in gold | 2,174,076,950 | 1,593,557,391 |
| Value added tax recoverable | 277,741,555 | 259,582,324 |
| Prepaid expenses and other current assets | 381,376 | 87,590 |
| Total current assets | 2,632,680,342 | 1,985,744,613 |
| | | |
| Property and equipment, net | 5,104,757 | 5,395,330 |
| Restricted cash | 1,660,633 | 7,766,372 |
| Investments in gold | 232,428,147 | 700,225,896 |
| Land use right | 402,673 | 395,719 |
| Other noncurrent assets | 519,295 | 285,768 |
| Total long-term assets | 240,115,505 | 714,069,085 |
| **TOTAL ASSETS** | $2,872,795,847 | $2,699,813,698 |
| | | |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| **CURRENT LIABILITIES** | | |
| Short term loans | $1,600,320,041 | $1,034,947,774 |
| Related party loan | 74,494,554 | 72,699,779 |
| Due to related party | 4,164,872 | 3,976,742 |
| | | |
| Income tax payable | 15,443,613 | 18,504,197 |
| Other taxes payable | 2,008,975 | 2,577,102 |
| Accrued expenses and other payables | 16,457,625 | 15,749,564 |
| Total current liabilities | 1,712,889,680 | 1,148,455,158 |
| | | |
| Deferred tax liabilities | 12,809,830 | 24,218,911 |
| Other long-term liability | 163,887 | - |
| Related party loans | 348,912,801 | 373,327,862 |
| Long term loans | 166,063,261 | 515,477,020 |
| **TOTAL LIABILITIES** | 2,240,839,459 | 2,061,478,951 |
| | | |
| **COMMITMENTS AND CONTINGENCIES** | | |
| **SHAREHOLDERS' EQUITY** | | |
| Preferred stock, $0.001 par value, 500,000 shares authorized, none issued or   outstanding as of March 31, 2019 and December 31, 2018 | - | - |
| Common stock $0.001 par value, 100,000,000 shares authorized, 66,113,502 shares issued and outstanding as of March 31, 2019 and December 31, 2018 | 66,113 | 66,113 |
| Additional paid-in capital | 224,298,271 | 224,292,907 |
| Retained earnings | | |
| Unappropriated | 359,593,904 | 353,213,325 |

| | | |
|---|---:|---:|
| Appropriated | 967,543 | 967,543 |
| Accumulated other comprehensive income, net of tax | 47,030,557 | 59,794,859 |
| Total Shareholders' Equity | 631,956,388 | 638,334,747 |
| **TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY** | $2,872,795,847 | $2,699,813,698 |

101.    The 1Q19 10-Q also included the following table of inventories

**NOTE 3 – INVENTORIES**

Inventories as of March 31, 2019 and December 31, 2018 consisted of the following:

| | As of | |
|---|---:|---:|
| | **March 31, 2019** | **December 31, 2018** |
| | **(unaudited)** | |
| Raw materials (A) | $ 53,960,649 | $ - |
| Work-in-progress (B) | 70,719,294 | 87,160,453 |
| Finished goods (C) | 39,169,012 | 39,874,220 |
| Total inventories | $ 163,848,955 | $ 127,034,673 |

(A) Included 1,536,517 grams of Au9999 gold as of March 31, 2019 and Nil Au9999 gold as of December 31, 2018.
 (B) Included 2,020,811 grams of Au9999 gold as of March 31, 2019 and 2,570,232 grams of Au9999 gold as of December 31, 2018.
(C) Included 1,111,725 grams of Au9999 gold as of March 31, 2019 and 1,168,892 grams of Au9999 gold as of December 31, 2018.

102.    The above-referenced consolidated balance sheet and table of inventories contained in the 1Q19 10-Q were false and misleading because they misrepresented the worth of the Company's gold assets and investments in gold, and failed to disclose that the Company's loans had been secured with counterfeit gold.

***August 9, 2019 10-Q***

103.    Kingold filed its quarterly report on Form 10-Q for the fiscal quarter ended June 30, 2019 (the "2Q19 10-Q") on August 9, 2019. The 2Q19 10-Q was signed by Defendants Jia and Liu.

104.    The 2Q19 10-Q also contained SOX certifications signed by Defendants Jia and Liu attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

105.    Regarding legal proceedings involving the Company, the 2Q19 10-Q stated the following:

**Item 1. Legal Proceedings**

From time to time, we may be subject to legal proceedings and claims in the ordinary course of business. We are not currently a party to any litigation the outcome of which, if determined adversely to us, would individually or in the aggregate be reasonably expected to have a material adverse effect on our business, operating results, cash flows or financial condition. Our business may also be adversely affected by risks and uncertainties not presently known to us or that we currently believe to be immaterial. If any of the events contemplated by the following discussion of risks should occur, our business, prospects, financial condition and results of operations may suffer.

106.    The above-referenced statement in the 1Q19 10-Q was false and misleading because it failed to disclose Evergrowing's lawsuit to obtain repayment of its loans to Kingold.

107.    The 2Q19 10-Q provided the following consolidated balance sheet:

**KINGOLD JEWELRY, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS**
**(IN U.S. DOLLARS)**
**(UNAUDITED)**

|  | June 30, 2019 | December 31, 2018 |
|---|---|---|
|  | (Unaudited) |  |
| **ASSETS** |  |  |
| Cash | $  114,723,841 | $        233,391 |
| Restricted cash | 14,337,042 | 4,798,185 |
| Accounts receivable | 264,158 | 451,059 |
| Inventories | 262,763,620 | 127,034,673 |
| Investments in gold | 2,215,449,367 | 1,593,557,391 |
| Value added tax recoverable | 258,933,954 | 259,582,324 |
| Prepaid expenses and other current assets | 82,629 | 87,590 |
| Total current assets | 2,866,554,611 | 1,985,744,613 |
| Property and equipment, net | 4,924,793 | 5,395,330 |
| Restricted cash | 1,747,539 | 7,766,372 |
| Investments in gold | 246,949,601 | 700,225,896 |
| Land use right | 390,837 | 395,719 |
| Other noncurrent assets | 492,637 | 285,768 |
| Total long-term assets | 254,505,407 | 714,069,085 |
| **TOTAL ASSETS** | $3,121,060,018 | $2,699,813,698 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** |  |  |

**CURRENT LIABILITIES**

| | | |
|---|---:|---:|
| Short term loans | $1,532,528,884 | $1,034,947,774 |
| Related party loan | 72,593,313 | 72,699,779 |
| Due to related party | 4,383,039 | 3,976,742 |
| Income tax payable | 18,955,285 | 18,504,197 |
| Other taxes payable | 2,150,167 | 2,577,102 |
| Accrued expenses and other payables | 14,855,067 | 15,749,564 |
| Total current liabilities | 1,645,465,755 | 1,148,455,158 |
| | | |
| Deferred tax liabilities | 71,400,016 | 24,218,911 |
| Other long-term liability | 160,190 | - |
| Related party loans | 419,694,803 | 373,327,862 |
| Long term loans | 174,753,888 | 515,477,020 |
| **TOTAL LIABILITIES** | 2,311,474,652 | 2,061,478,951 |
| | | |
| **COMMITMENTS AND CONTINGENCIES** | | |
| **SHAREHOLDERS' EQUITY** | | |
| Preferred stock, $0.001 par value, 500,000 shares authorized, none issued or   outstanding as of June 30, 2019 and December 31, 2018 | - | - |
| Common stock $0.001 par value, 100,000,000 shares authorized, 66,113,502 shares issued and outstanding as of June 30, 2019 and December 31, 2018 | 66,113 | 66,113 |
| Additional paid-in capital | 224,298,271 | 224,292,907 |
| Retained earnings | | |
| Unappropriated | 372,183,091 | 353,213,325 |
| Appropriated | 967,543 | 967,543 |
| Accumulated other comprehensive income, net of tax | 212,070,348 | 59,794,859 |
| Total Shareholders' Equity | 809,585,366 | 638,334,747 |
| **TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY** | $3,121,060,018 | $2,699,813,698 |

108.    The 2Q19 10-Q also provided the following table of inventories:

**NOTE 3 – INVENTORIES**

Inventories as of June 30, 2019 and December 31, 2018 consisted of the following:

| | As of | |
|---|---:|---:|
| | **June 30, 2019** | **December 31, 2018** |
| | **(unaudited)** | |
| Raw materials (A) | $148,873,722 $ | - |
| Work-in-progress (B) | 73,045,237 | 87,160,453 |
| Finished goods (C) | 40,844,661 | 39,874,220 |
| Total inventories | $262,763,620 $ | 127,034,673 |

(A) Included 4,280,771 grams of Au9999 gold as of June 30, 2019 and Nil Au9999 gold as of December 31, 2018.
(B) Included 2,108,382 grams of Au9999 gold as of June 30, 2019 and 2,570,232 grams of Au9999 gold as of December 31, 2018.
(C) Included 1,172,133 grams of Au9999 gold as of June 30, 2019 and 1,168,892 grams of Au9999 gold as of December 31, 2018.

109.    The above-referenced consolidated balance sheet and table of inventories contained in the 2Q19 10-Q were false and misleading because they misrepresented the worth of the Company's gold assets and investments in gold, and failed to disclose that the Company's loans had been secured with counterfeit gold.

### *November 12, 2019 10-Q*

110.    Kingold filed its quarterly report on Form 10-Q for the fiscal quarter ended September 30, 2019 (the "3Q19 10-Q") on November 12, 2019. The 3Q19 10-Q was signed by Defendants Jia and Liu.

111.    The 3Q19 10-Q also contained SOX certifications signed by Defendants Jia and Liu attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

112.    Regarding legal proceedings involving the Company, the 2Q19 10-Q stated the following :

**Item 1. Legal Proceedings**

From time to time, we may be subject to legal proceedings and claims in the ordinary course of business. We are not currently a party to any litigation the outcome of which, if determined adversely to us, would individually or in the aggregate be reasonably expected to have a material adverse effect on our business, operating results, cash flows or financial condition. Our business may also be adversely affected by risks and uncertainties not presently known to us or that we currently believe to be immaterial. If any of the events contemplated by the following discussion of risks should occur, our business, prospects, financial condition and results of operations may suffer.

113.    The above-referenced statement in the 3Q19 10-Q was false and misleading because it failed to disclose Evergrowing's lawsuit to obtain repayment of its loans to Kingold.

114.    The 3Q19 10-Q included the following consolidated balance sheet:

**KINGOLD JEWELRY, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS**
**(IN U.S. DOLLARS)**

**(UNAUDITED)**

| | September 30, 2019 | December 31, 2018 |
|---|---|---|
| | | (Audited) |
| **ASSETS** | | |
| Cash | $ 651,318 | $ 233,391 |
| Restricted cash | 14,632,279 | 4,798,185 |
| Accounts receivable | 654,455 | 451,059 |
| Inventories | 268,214,300 | 127,034,673 |
| Investments in gold | 2,323,335,559 | 1,593,557,391 |
| Value added tax recoverable | 242,624,812 | 259,582,324 |
| Short-term investments | 195,062,420 | - |
| Prepaid expenses and other current assets | 374,843 | 87,590 |
| Total current assets | 3,045,549,986 | 1,985,744,613 |
| | | |
| Property and equipment, net | 4,420,547 | 5,395,330 |
| Restricted cash | 1,681,073 | 7,766,372 |
| Investments in gold | 267,177,647 | 700,225,896 |
| Land use right | 373,324 | 395,719 |
| Other noncurrent assets | 459,524 | 285,768 |
| Total long-term assets | 274,112,115 | 714,069,085 |
| **TOTAL ASSETS** | $3,319,662,101 | $2,699,813,698 |
| | | |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| | | |
| **CURRENT LIABILITIES** | | |
| | | |
| Short term loans | $1,423,679,826 | $1,034,947,774 |
| Related party loan | 69,832,280 | 72,699,779 |
| Due to related party | 4,410,957 | 3,976,742 |
| Income tax payable | 18,050,006 | 18,504,197 |
| Other taxes payable | 2,184,430 | 2,577,102 |
| Convertible notes payable, net of discount | 599,739 | - |
| Derivative liabilities | 267,000 | |
| Accrued expenses and other payables | 17,682,301 | 15,749,564 |
| Total current liabilities | 1,536,706,539 | 1,148,455,158 |
| | | |
| Deferred tax liabilities | 127,501,207 | 24,218,911 |
| Related party loans | 534,228,724 | 373,327,862 |
| Long term loans | 168,107,252 | 515,477,020 |
| Other long-term liability | 154,098 | - |
| **TOTAL LIABILITIES** | 2,366,697,820 | 2,061,478,951 |
| | | |
| **COMMITMENTS AND CONTINGENCIES** | - | - |
| **SHAREHOLDERS' EQUITY** | | |
| Preferred stock, $0.001 par value, 500,000 shares authorized, none issued or outstanding as of September 30, 2019 and December 31, 2018 | - | - |
| Common stock, $0.001 par value, 100,000,000 shares authorized, 11,018,955 shares issued and outstanding as of September 30, 2019 and December 31, 2018* | 11,019 | 11,019 |
| Additional paid-in capital | 224,420,422 | 224,348,001 |
| Retained earnings | | |
| Unappropriated | 348,178,634 | 353,213,325 |
| Appropriated | 967,543 | 967,543 |

| | | |
|---|---|---|
| Accumulated other comprehensive income, net of tax | 379,386,663 | 59,794,859 |
| **Total Shareholders' Equity** | 952,964,281 | 638,334,747 |
| | | |
| **TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY** | $3,319,662,101 | $2,699,813,698 |

115.    The 3Q19 10-Q also included the following table of inventories:

**NOTE 3 – INVENTORIES**

Inventories as of March 31, 2019 and December 31, 2018 consisted of the following:

| | As of | | | |
|---|---|---|---|---|
| | **March 31, 2019** | | **December 31, 2018** | |
| | **(unaudited)** | | | |
| Raw materials (A) | $ | 53,960,649 | $ | - |
| Work-in-progress (B) | | 70,719,294 | | 87,160,453 |
| Finished goods (C) | | 39,169,012 | | 39,874,220 |
| Total inventories | $ | 163,848,955 | $ | 127,034,673 |

(A)     Included 1,536,517 grams of Au9999 gold as of March 31, 2019 and Nil Au9999 gold as of December 31, 2018.

(B)     Included 2,020,811 grams of Au9999 gold as of March 31, 2019 and 2,570,232 grams of Au9999 gold as of December 31, 2018.

(C)     Included 1,111,725 grams of Au9999 gold as of March 31, 2019 and 1,168,892 grams of Au9999 gold as of December 31, 2018.

116.    The above-referenced consolidated balance sheet and table of inventories contained in the 3Q19 10-Q were false and misleading because they misrepresented the worth of the Company's gold assets and investments in gold, and failed to disclose that the Company's loans had been secured with counterfeit gold.

***November 18, 2019 Proxy Statement***

117.    On November 18, 2019, Kingold filed the 2019 Proxy Statement pursuant to Section 14(a) of the Exchange Act. The 2019 Proxy Statement was solicited by Defendants Jia, Wang, Chen, Wu, and Xia.[4]

---

[4] Plaintiff's allegations with respect to the misleading statements in the 2019 Proxy Statement are based solely on negligence; they are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants, and they do not allege, and do not sound in, fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these allegations and related claims.

118.    Regarding the Code of Ethics, the 2019 Proxy Statement stated that Kingold had "adopted a code of business conduct and ethics that applies to all of our employees, officers and directors, including those officers responsible for financial reporting." The 2019 Proxy Statement was false and misleading because the Code of Ethics was not followed, as evidenced by the numerous false and misleading statements described herein and the Individual Defendants' participation in the Counterfeit Collateral Scheme.

119.    The 2019 Proxy Statement also failed to disclose, *inter alia*, that: (1) the Individual Defendants fraudulently represent gilded copper bars as genuine gold to Lenders in order to obtain loans; (2) because Kingold's purported gold was actually gilded copper, the value of the gold assets reported in the Company's financial statements was improperly inflated; (3) Kingold had been a party to material litigation with various Lenders since at least late 2019; (4) as a result of the foregoing, Kingold would predictably be subjected to serious regulatory consequences, including an investigation by the PRC and delisting from the Shanghai Gold Exchange; (5) the Company failed to maintain internal controls; and (6) due to the foregoing, the Individual Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

120.    On June 1, 2020, Kingold announced that Defendant Liu was abruptly stepping down from his role as the Company's CFO.

121.    Later that month, on June 24, 2020, the Shanghai Gold Exchange announced that the Company had been disqualified from membership in the exchange.

122.    Then, on June 29, Caixin Global published the Caixin Article, which broke the story that the Individual Defendants had borrowed over than $2 billion in loans that were collateralized by counterfeit gold bars. The Caixin Article stated the following:

More than a dozen Chinese financial institutions, mainly trust companies, loaned 20 billion yuan ($2.8 billion) over the past five years to Wuhan Kingold Jewelry Inc. with pure gold as collateral and insurance policies to cover any losses. Kingold is the largest privately owned gold processor in central China's Hubei province. Its shares are listed on the Nasdaq stock exchange in New York. The company is led by Chairman Jia Zhihong, an intimidating ex-military man who is the controlling shareholder.

What could go wrong?

Well, plenty, *as at least some of 83 tons of gold bars used as loan collateral turned out to be nothing but gilded copper. That has left lenders holding the bag for the remaining 6 billion yuan of loans outstanding against the bogus bars.* The loans were covered by 30 billion yuan of property insurance policies issued by state insurer PICC Property and Casualty Co. Ltd. (PICC P&C) and other smaller insurers.

*The fake gold came to light in February when Dongguan Trust Co. Ltd. set out to liquidate Kingold collateral to cover defaulted debts. In late 2019 Kingold failed to repay investors in several trust products. Dongguan Trust said it discovered that the gleaming gold bars were actually gilded copper alloy.*

*The news sent shockwaves through Kingold's creditors. China Minsheng Trust Co. Ltd., one of Kingold's largest creditors, obtained a court order to test collateral before Kingold's debts came due. On May 22, the test result returned saying the bars sealed in Minsheng Trust's coffers are also copper alloy.*

Authorities are investigating how this happened. Kingold chief Jia flatly denies that anything is wrong with the collateral his company put up.

\*     \*     \*

In the case of Kingold, the company said it took out loans against gold to supplement its cash holdings, support business operations and expand gold reserves, according to public records. In 2018, the company beat a number of competitors in bidding to buy a controlling stake in stateowned auto parts maker Tri-Ring Group. Kingold offered 7 billion yuan in cash for 99.97% of TriRing. The Hubei government cited the deal as a model of so-called mixed-ownership reform, which seeks to invite private shareholders into state-owned enterprises. But Kingold has faced problems taking over Tri-Ring's assets amid a series of corruption probes and disputes involving Tri-Ring. After obtaining the test results, Minsheng Trust executive said the company asked Jia whether the company fabricated the gold bars. "He flatly denied it and said it was because some of the gold the company acquired in early days had low purity," the executive said. In a telephone interview with Caixin in early June, Jia denied that the gold pledged by his company was faked. "How could it be fake if insurance companies agreed to cover it?" he said and refused to comment further.

**As of early June, Minsheng Trust, Dongguan Trust and a smaller creditor Chang'An Trust filed lawsuits against Kingold and demanded that PICC P&C cover their losses.** PICC P&C declined to comment to Caixin on the matter but said the case is in judicial procedure.

A source from PICC P&C told Caixin that the claim procedure should be initiated by Kingold as the insured party rather than financial institutions as beneficiaries. Kingold hasn't made a claim, the source said.

Caixin learned that **the Hubei provincial government set up a special task force to oversee the matter** and that **the public security department launched an investigation**. **The Shanghai Gold Exchange, a gold industry self-regulatory organization, disqualified Kingold as a member** June 24.

All that glitters is not gold

**Following Dongguan Trust and Minsheng Trust, two other Kingold creditors also tested pledged gold bars and found they were fake**, Caixin learned. A Dongguan Trust employee said his company reported the case to police Feb. 27, the day after the Hubei branch. Kingold has defaulted on 1.8 billion yuan of loans from Dongguan Trust with an additional 1.6 billion yuan due in July. The 83 tons of purportedly pure gold stored in creditors' coffers by Kingold as of June, backing the 16 billion yuan of loans, would be equivalent to 22% of China's annual gold production and 4.2% of the state gold reserve as of 2019. Founded in 2002 by Jia, Kingold was previously a gold factory in Hubei affiliated with the People's Bank of China that was split off from the central bank during a restructuring. With businesses ranging from gold jewelry design, manufacturing and trading, Kingold is one of China's largest gold jewelry manufacturers, according to the company website. The company debuted on Nasdaq in 2010. The stock currently trades around $1 apiece, giving Kingold a market value of $12 million, down 70% from a year ago. A company financial report showed that Kingold had $3.3 billion of total assets as of the end of September 2019, with liabilities of $2.4 billion. Jia, now 59, served in the military in Wuhan and Guangzhou and spent six years living in Hong Kong. He once managed gold mines owned by the People's Liberation Army.

\*       \*       \*

Several trust company sources said Jia is well connected in Hubei, which may explain Kingold's surprise victory in the Tri-Ring deal. **But a financial industry source in Hubei said Jia's business is not as solid as it may appear.**

**"We knew for years that he doesn't have much gold — all he has is copper," said the source, who declined to be named.**

Local financial institutions in Hubei have avoided doing business with Kingold, but they don't want to offend him publicly, the source said.

"Almost none of Hubei's local trust companies and banks has been involved in (Kingold's) financing," he said.

Public records showed that most of Kingold's creditors are from outside Hubei. Caixin learned from regulatory sources that Minsheng Trust is the largest creditor of Kingold with nearly 4.1 billion yuan of outstanding loans, followed by [Evergrowing] Bank's 3.9 billion yuan, Dongguan Trust's 3.4 billion yuan, Anxin Trust & Investment Co.'s 1.9 billion yuan and Sichuan Trust Co.'s 1.8 billion yuan.

Several industry sources told Caixin that the institutions were willing to offer loans to Kingold because Jia promised to help them dispose of bad loans. [Evergrowing] Bank is the only commercial bank involved in the Kingold affair. The bank in 2017 provided an 8 billion yuan loan to Kingold, which in return agreed to help the bank write off 500 million yuan of bad loans, bank sources said. Kingold repaid half of the debts in 2018.

*But the loan issuance involved many irregularities as access to the pledged gold and testing procedures was controlled by Kingold*, one [Evergrowing] employee said. The loan was pushed forward by Song Hao, former head of [Evergrowing]'s Yantai branch. Song was placed under graft investigation in March 2018 in connection with the bank's disgraced former Chairman Cai Guohua, whose downfall led to a major revamp in the bank's management. *In 2019, [Evergrowing]'s new management sued Kingold for the unpaid loans and moved to dispose the collateral. But a test of the gold bars found they are "all copper,"* the bank source said. It is still unclear whether the collateral was faked in the first place or replaced afterward. Sources from Minsheng Trust and Dongguan Trust confirmed that the collateral was examined by third-party testing institutions and strictly monitored by representatives from Kingold, lenders and insurers during the process of delivery. "I still can't understand which part went wrong," a Minsheng Trust source said. Bank records showed that the vault where the collateral was stored was never opened, the source said.

\*     \*     \*

*Since 2015, Kingold has increased its reliance on gold-backed borrowing and started working with PICC P&C to cover the loans. In 2016, Kingold borrowed 11 billion yuan, nearly 16 times higher than the previous year's figure. Its debt-to asset ratio surged to 87.5% from 43.4%, according to a company financial report. That year, Kingold pledged 54.7 tons of gold for loans, 7.5 times higher than the previous year.*

A person close to Jia said the surge of borrowing was partly due to Kingold's pursuit of Tri-Ring... The deal drew immediate controversy as some rival bidders questioned the transparency of the bidding process and Kingold's qualifications. According to Kingold's financial reports, the company had only 100 million yuan of net assets in 2016 and 2 billion yuan in 2017, sparking doubts over its capacity to pay for the deal.

Despite the fuss, Kingold paid 2.8 billion yuan for the first installment shortly after the announcement of the deal. The second installment of 2.4 billion yuan was paid several months later with funds raised from Dongguan Trust.

In December, Tri-Ring completed its business registration change, marking completion of Kingold's takeover. However, the new owner has since faced troubles mobilizing Tri-Ring's assets because of a series of corruption probes surrounding the auto parts maker since early 2019 that brought down TriRing's former chairman.

A major part of Tri-Ring's assets were frozen amid the investigation and subsequent debt disputes, limiting Jia's access to the assets.

Hobbled by the Tri-Ring deal, which cost billions of yuan but has yet to make any return, Jia's capital chain was eventually broken when [Evergrowing] Bank pushed for repayment, triggering a series of events that brought the fake gold to light, said a person close to the matter.

*     *     *

Insurers' involvement was key to the success of Kingold's gold-backed loan deals. The insurance policies provided by leading state-owned insurers like PICC P&C were a major factor defusing lenders' risk concerns, several trust company sources said. "Without the insurance coverage from PICC P&C, (we) wouldn't issue loans to Kingold as the collateral can only be tested through random picked samples," one person said. PICC P&C's Hubei branch provided coverage for most of Kingold's loans, Caixin learned. All the policies will expire by October. As of June 11, 60 policies were still valid or involved in lawsuits.

(Emphasis added.)

123.    The Caixin Article also suggested that the Individual Defendants may have colluded with individuals at certain of the Creditors in carrying out the scheme, stating the following:

> **[T]he loan issuance [from Evergrowing to Kingold] involved many irregularities** as access to the pledged gold and testing procedures was controlled by Kingold, one [Evergrowing] employee said. The loan was pushed forward by Song Hao, former head of [Evergrowing]'s Yantai branch. Song was placed under graft investigation in March 2018 in connection with the bank's disgraced former Chairman Cai Guohua, whose downfall led to a major revamp in the bank's management.

*     *     *

> A financial regulatory official told Caixin that **previous investigations of loan fraud cases involving fake gold pledges found there was often collusion between borrowers and financial institutions.**

> Earlier this year, PICC P&C removed its Hubei branch party head and general manager Liu Fangming**. Sources said staff members involved in business with Kingold were also dismissed.**

> **PICC P&C said Liu [Fangming]'s removal was due to internal management issues. It didn't answer Caixin's question about whether Liu [Fangming] was involved in the Kingold scandal.**

(Emphasis added.)

124.    On this news, Kingold stock plunged by over 24%, falling from $1.12 per share at the close of trading on June 26, 2020, the prior trading day, to close at $0.85 per share on June 29, 2020.

125.    On July 6, 2020, Kingold filed the July 6, 2020 8-K, which revealed that the Company had "received various notices of default on a number of loans with seven lenders," and

41

that "[t]he aggregate amount of loans for which Wuhan Kingold has received notices of default is approximately RMB 10 billion."

126.    The July 6, 2020 8-K also disclosed that in February 2020, Anxin had filed a lawsuit against Wuhan Kingold in connection with a dispute over the gold-backed loans Anxin had provided to the Company.

127.    The July 6, 2020 8-K indicated that Defendants Chen and Wu had been appointed to a special committee to investigate the allegations described herein.

128.    On July 14, 2020, the Company filed a current report on Form 8-K (the "July 14, 2020 8-K") disclosing the following additional details regarding Anxin's lawsuit:

> **Anxin Litigation Update.** As previously disclosed, in February 2020, Anxin Trust Co., Ltd. ("Anxin Trust") filed a lawsuit against Wuhan Kingold and the Company's CEO in connection with the loan dispute arising from the loan agreement Wuhan Kingold entered into with Anxin Trust on January 29, 2016, and related extension and supplemental agreements. In April 2020, the plaintiff amended its complaint to add an additional defendant, Wuhan Kingold Industrial Group Co., Ltd, a related party to the Company, to the case and to change the outstanding balance of the due and payable amount under the loan from approximately RMB 0.39 billion in interest to a total of approximately RMB 2.3 billion including approximately RMB 2.0 billion of loan principal. This loan dispute suit is pending with the Shanghai Financial Court (the "Financial Court"). To preserve the defendants' assets pending the outcome of the trial, ***in May 2020, the Financial Court issued a ruling and ordered to freeze the defendants' assets of an aggregate value of approximately RMB 1.9 billion, including bank deposits, real property or personal property.*** At present, the parties' suit regarding venue change is pending with the Shanghai High People's Court and no hearing has been scheduled as of the date of this report.

(Emphasis added.)

129.    The July 14, 2020 8-K further disclosed that the Company had failed to timely file the 1Q20 10-Q. In the 1Q20 10-Q, the Company would have been required to disclose Anxin's lawsuit against the Company and any other material litigation with Creditors that may have been pending. The July 14, 2020 8-K also revealed that the special committee announced in the July 6, 2020 8-K was unable to retain advisors due to the Company's bank accounts being frozen.

130.    On August 11, 2020, the Company filed a current report on Form 8-K indicating that the Individual Defendants had decided to voluntarily delist Kingold's common stock from NASDAQ. The Form 8-K also stated the following:

> The decision to delist from NASDAQ resulted from the Board of Directors' review of numerous factors, particularly the cost and feasibility of ongoing compliance with the NASDAQ listing requirements and the Company's current financial condition.

131.    On August 15, 2020, Friedman resigned as the Company's independent registered public accounting firm. In its resignation letter, Friedman stated the following:

> This letter serves as notification that we have become aware of information which relates to Kingold Jewelry, Inc.'s ("the Company") financial statements for the years ended December 31, 2016, December 31, 2017 and December 31, 2018 ("the financial statements"), which was not known to Friedman at the date of our audit reports relating to the financial statements, and which is of such a nature and from such a source that we would have investigated the information had it come to our attention during the course of the audits relating to the financial statements. ***The Company has not cooperated in attempting to substantiate this information and, as a result, Friedman is unable to conduct a satisfactory investigation of the information. Accordingly, Friedman's audit reports on the financial statements should no longer be relied upon or associated with the financial statements.***
>
> *                *                *
>
> This letter also serves as notification of Friedman's resignation as the Company's independent registered public accounting firm. Consistent with the terms of our engagement letter, we have elected to withdraw from this engagement because, in our judgment, ***we are unable to obtain reasonable assurance about the financial statements as would be required to issue an unmodified audit opinion***. We also confirm that the client-auditor relationship between the Company and Friedman LLP has ceased.

(Emphasis added.)

132.    On August 31, 2020, the Company's stock was delisted from NASDAQ.

### The Company's Delinquent Filings

133.    Throughout its history as a publicly-traded company, Kingold's management have repeatedly failed to timely file the Company's quarterly and annual reports as required by SEC

regulations. Each of the Company's 2017 10-K, 3Q18 10-Q, 2018 10-K, and 1Q19 10-Q, for example, were submitted past their ordinary deadlines.

134. On June 30, 2020, the Company was notified by NASDAQ officials that the Company was in violation of the requirements of NASDAQ Listing Rule 5250(c)(1) for continued listing on the NASDAQ because the Company had failed to timely file its 1Q20 10-Q. NASDAQ further stated that the Company had until August 29, 2020 to either file its 1Q20 10-Q or submit a plan to do so. As of the date of the filing of this complaint, the Individual Defendants have yet to file the Company's 1Q20 10-Q.

135. On July 2, 2020, the Company was notified by NASDAQ that it was in further violation of NASDAQ Listing Rule 5250(c)(1) because the Company had failed to timely file its 2019 10-K. NASDAQ granted the Company until July 16, 2020 to submit a plan to regain compliance, but the Individual Defendants missed this deadline as well, and as of the date of the filing of this complaint, they have yet to file the Company's 2019 10-K.

## DAMAGES TO KINGOLD

136. Due to the Individual Defendants' misconduct, Kingold will lose and expend many millions of dollars.

137. These expenditures include any legal fees incurred in connection with the Securities Class Actions filed against the Company, its CEO, and its former CFO, and any internal investigations and amounts paid to outside lawyers, accountants, and investigators in connection thereto, as well as costs levied by Chinese governmental authorities and other parties in connection with the freeze on the Company's bank accounts.

138.    These expenditures also include legal fees associated with the Lenders' lawsuits involving the Company, including the suits filed by Evergrowing and Anxin, and fees incurred in connection with the PRC's investigation of Kingold.

139.    Additionally, these expenditures include compensation, benefits, and other payments provided to the Individual Defendants which were excessive in light of the Individual Defendants' breaches of fiduciary duties to the Company and other misconduct.

140.    Such losses include the Company's disqualification from membership in the Shanghai Gold Exchange and delisting from NASDAQ.

141.    As a direct result of the Individual Defendants' misconduct, the Company has suffered and will continue to suffer a loss of reputation and goodwill, as well as a "liar's discount" that will negatively impact the Company's stock in the future due to the Individual Defendants' misrepresentations and their breaches of fiduciary duties.

## DERIVATIVE ALLEGATIONS

142.    Plaintiff brings this action derivatively and for the benefit of the Company to redress injuries suffered, and to be suffered, due to the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Kingold, as well as the aiding and abetting thereof.

143.    Kingold is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

144.    Plaintiff is, and has been since 2011, a Kingold shareholder. Plaintiff will fairly and adequately represent the interests of the Company in prosecuting and enforcing the Company's rights, and in furtherance of that end, Plaintiff has retained counsel experienced in derivative litigation to enforce and prosecute this action.

## DEMAND FUTILITY

145.    Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

146.    A pre-suit demand on the Board of Kingold is futile and, thus, excused. As of the date of the filing of this action, the Company's Board consists of the following five Individual Defendants: Defendants Jia, Chen, Wang, Wu, and Xia (the "Directors"). Plaintiff needs only to allege demand futility as to three of the five Directors who are on the Board at the time this action was commenced.

147.    Demand is excused as to all five Directors, because each one of them faces a substantial likelihood of liability as a result of their knowing or reckless engagement in the Counterfeit Collateral Scheme and in the scheme to make and/or cause the Company to make false and misleading statements and omissions of material facts, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

148.    In abdication of their fiduciary duties to Kingold, the Directors either knowingly or recklessly participated in the Counterfeit Collateral Scheme and in making and/or causing the Company to make the false and misleading statements and omissions of material fact described herein. The fraudulent scheme was, among other things, designed to make the Company appear more profitable than it actually was, and thus more attractive to investors. Due to the foregoing, the Directors breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is therefore excused as being futile.

149.    Specific reasons why demand on each Director is futile are as follows:

***Defendant Jia***

46

150.    Defendant Jia founded Kingold, and he has served as the Kingold's CEO and as the Chairman of the Board since 2009. As the Company admits, Defendant Jia is a non-independent director. Defendant Jia has received and continues to receive compensation for his roles with the Company as described herein. Defendant Jia also owned approximately 25.5% of the Company's outstanding shares as of November 14, 2019, rendering him a majority shareholder. Additionally, Defendant Jia and, in some instances, his spouse personally guaranteed all the loans that are at issue as described herein.

151.    Defendant Jia was responsible for all of the false and misleading statements and omissions that were made, including those contained in the Company's SEC filings referenced herein. As the Company's CEO and as a trusted Company director, Defendant Jia conducted little to no oversight of the Counterfeit Collateral Scheme and of the Company's engagement in the scheme to make false and misleading statements. He also consciously disregarded his duties to monitor controls over reporting and engagement in the schemes, and disregarded his duties to protect corporate assets. Additionally, Defendant Jia is a named defendant in the Securities Class Actions and faces a substantial likelihood of liability in connection thereto.

152.    As such, Defendant Jia breached his fiduciary duties, is not independent or disinterested, and faces a significant likelihood of liability. Therefore, demand upon him is excused as being futile.

### Defendant Wang

153.    Defendant Wang is a current Company director, as well as the Company's General Manager, and has served in those roles since 2014. Defendant Wang has received and continues to receive compensation for his role as General Manager as described herein.

154.     As a trusted Company officer and director, Defendant Wang conducted little to no oversight of the Counterfeit Collateral Scheme and of the Company's engagement in the scheme to make false and misleading statements. He also consciously disregarded his duties to monitor controls over reporting and engagement in the schemes, and disregarded his duties to protect corporate assets. Defendant Wang also personally signed the false and misleading statements in the Company's 2017 and 2018 10-Ks.

155.     As such, Defendant Wang breached his fiduciary duties, is not independent or disinterested, and faces a significant likelihood of liability. Therefore, demand upon him is excused as being futile.

### Defendant Chen

156.     Defendant Chen is a current Company director, and has served in that role since June 2014. Defendant Chen has received and continues to receive compensation for his role as a Director as described herein.

157.     As a trusted Company director, Defendant Chen conducted little to no oversight of the Counterfeit Collateral Scheme and of the Company's engagement in the scheme to make false and misleading statements. He also consciously disregarded his duties to monitor controls over reporting and engagement in the schemes, and disregarded his duties to protect corporate assets. Defendant Chen also personally signed the false and misleading statements in the Company's 2017 and 2018 10-Ks.

158.     As such, Defendant Chen breached his fiduciary duties, is not independent or disinterested, and faces a significant likelihood of liability. Therefore, demand upon him is excused as being futile.

### Defendant Wu

159.    Defendant Wu is a current Company director, and has served in that role since 2016. Defendant Wu also serves as the Chair of the Audit Committee, and as a member of the Compensation Committee and the Nominating Committee. Defendant Wu has received and continues to receive compensation for her role as a Director as described herein.

160.    As a trusted Company director, Defendant Wu conducted little to no oversight of the Counterfeit Collateral Scheme and of the Company's engagement in the scheme to make false and misleading statements. She also consciously disregarded her duties to monitor controls over reporting and engagement in the schemes, and disregarded her duties to protect corporate assets. Defendant Wu also personally signed the false and misleading statements in the Company's 2017 and 2018 10-Ks.

161.    As such, Defendant Wu breached her fiduciary duties, is not independent or disinterested, and faces a significant likelihood of liability. Therefore, demand upon her is excused as being futile.

### Defendant Xia

162.    Defendant Xia is a current Company director, and has served in that role since August 2016. Defendant Xia also serves as the Chair of the Compensation Committee, and as a member of the Audit Committee and the Nominating Committee.

163.    As a trusted Company director, Defendant Xia conducted little to no oversight of the Counterfeit Collateral Scheme and of the Company's engagement in the scheme to make false and misleading statements. He also consciously disregarded his duties to monitor controls over reporting and engagement in the schemes, and disregarded his duties to protect corporate assets. Defendant Xia also personally signed the false and misleading statements in the Company's 2017 and 2018 10-Ks.

164.    As such, Defendant Xia breached his fiduciary duties, is not independent or disinterested, and faces a significant likelihood of liability. Therefore, demand upon him is excused as being futile.

### *Additional Reasons*

165.    Further reasons why demand on the Board is futile are as follows:

166.    Defendants Chen, Wu, and Xia (the "Audit Committee Defendants") served as members of Kingold's Audit Committee during the Relevant Period. Pursuant to the Company's Audit Committee Charter, the Audit Committee Defendants were responsible for overseeing, *inter alia*, the Company's accounting and financial reporting processes and the Company's compliance with legal and regulatory requirements. The Audit Committee Defendants failed to ensure the integrity of the Company's accounting and financial reporting processes, as they are required to do under the Audit Committee Charter, allowing the Company to file false and misleading financial statements with the SEC. As such, the Audit Committee Defendants breached their fiduciary duties to the Company and are not disinterested. Therefore, demand as to them is excused as being futile..

167.    Demand is excused because the Directors, all of whom are named as defendants in this action, are beholden to and controlled by Defendant Jia, who controls approximately 25.6% of total shareholder voting power as of November 14, 2019. These shareholdings provide Defendant Jia with significant control over the election of the Directors, and especially over Defendant Wang, who also serves as the Company's General Manager. For this reason, the Directors are unable to evaluate a demand with disinterest or independence.

168.    In violation of the Code of Ethics, the Directors conducted little to no oversight of the Company's internal controls over public reporting, of the Company's involvement in the

Counterfeit Collateral Scheme, and of the Company's involvement in the scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and violations of the Exchange Act. In further violation of the Code of Ethics, the Directors failed to comply with laws and regulations, maintain the accuracy of Company records and reports, comply with laws and regulations, and compete in an honest and ethical manner. For this reason too, the Directors face a substantial likelihood of liability and demand is futile as to them.

169.   The Company has been and will continue to be exposed to substantial losses and expenditures as a result of the misconduct described herein. Yet, the Directors have not filed any lawsuits against themselves or other individuals who were responsible for this misconduct to attempt to recover for the Company any part of the damages the Company suffered and will continue to suffer in connection with such misconduct. Thus, demand upon the Directors is futile.

170.   The Individual Defendants' conduct described herein was based on bad faith and intentional, reckless, or disloyal misconduct, and therefore could not have been the product of legitimate business judgement. As such, none of the Directors can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. For this reason, demand is excused as being futile.

171.   The acts complained of herein constitute violations of fiduciary duties owed by the Company's officers and directors, and these acts are incapable of ratification.

172.    The Directors may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., funds belonging to Company shareholders. If there is a directors' and officers' liability insurance policy covering the Directors, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Directors, known as, *inter alia*, the "insured-versus-insured exclusion." As such, if the Directors were to sue themselves or certain of the officers of Kingold, there would be no directors' and officers' insurance protection. Accordingly, the Directors cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Directors is excused as being futile.

173.    If there is no directors' and officers' liability insurance, then the Directors will not cause the Company to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. As such, demand is also futile in that event.

174.    Therefore, for all of the reasons set forth above, all of the Directors, and, if not all of them, at least three of the Directors, cannot consider a demand with disinterestedness and independence. Thus, a demand upon the Board is futile, and therefore, excused.

## **FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

175.    By reason of their positions as officers, directors and/or fiduciaries of Kingold and because of their ability to control the business and corporate affairs of Kingold, the Individual Defendants owed Kingold and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Kingold

in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Kingold and its shareholders so as to benefit all shareholders equally.

176.     Each director and officer of the Company owes to Kingold and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

177.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Kingold, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

178.     Each Individual Defendant, by virtue of his position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Kingold, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised Kingold's Board at all relevant times.

179.     To discharge their duties, the officers and directors of Kingold were required to exercise reasonable and prudent supervision over the management, policies, practices, operations,

and internal controls of the Company. By virtue of such duties, the officers and directors of Kingold were required to, among other things:

(a)    ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of the United States, and pursuant to Kingold's own Code of Ethics and internal guidelines;

(b)    conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)    remain informed as to how Kingold conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)    establish and maintain systematic and accurate records and reports of the business and internal affairs of Kingold and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)    maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Kingold's operations would comply with all laws and Kingold's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)    exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

180.    Each of the Individual Defendants further owed to Kingold and the shareholders the duty of loyalty requiring that each favor Kingold's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

181.    At all times relevant hereto, the Individual Defendants were the agents of each other and of Kingold and were at all times acting within the course and scope of such agency.

182.    Because of their advisory, executive, managerial, and directorial positions with Kingold, each of the Individual Defendants had access to adverse, non-public information about the Company.

183.    The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Kingold.

### FIRST CLAIM

**Against Individual Defendants for Violations of**
**Section 14(a) of the Exchange Act**

184.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

185.    The claims made pursuant to Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), that are alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. The Section 14(a) claims alleged herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these nonfraud claims.

186.    Section 14(a) of the Exchange Act provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

187.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

188.    Under the direction and watch of the Directors, the 2018 Proxy Statement failed to disclose, *inter alia*, that: (1) the Individual Defendants fraudulently represent gilded copper bars as genuine gold to Lenders in order to obtain loans; (2) because Kingold's purported gold was actually gilded copper, the value of the gold assets reported in the Company's financial statements was improperly inflated; (3) as a result of the foregoing, Kingold would predictably be subjected

to material litigation with Creditors as well as serious regulatory consequences, including an investigation by the PRC and delisting from the Shanghai Gold Exchange; (4) the Company failed to maintain internal controls; and (5) due to the foregoing, the Individual Defendants' public statements were materially false and misleading at all relevant times.

189.    Under the direction and watch of the Directors, the 2019 Proxy Statement failed to disclose, *inter alia*, that: (1) the Individual Defendants fraudulently represent gilded copper bars as genuine gold to Lenders in order to obtain loans; (2) because Kingold's purported gold was actually gilded copper, the value of the gold assets reported in the Company's financial statements was improperly inflated; (3) Kingold had been a party to material litigation with various Lenders since at least late 2019; (4) as a result of the foregoing, Kingold would predictably be subjected to serious regulatory consequences, including an investigation by the PRC and delisting from the Shanghai Gold Exchange; (5) the Company failed to maintain internal controls; and (6) due to the foregoing, the Individual Defendants' public statements were materially false and misleading at all relevant times.

190.    The 2018 and 2019 Proxy Statements (the "Proxy Statements") were also false and misleading when they discussed the Company's adherence to Code of Ethics and other governance policies, due to the Individual Defendants' failures to abide by them and their engagement in the Counterfeit Collateral Scheme and in the scheme to issue false and misleading statements to the public.

191.    In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the Proxy Statements were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination

in the Proxy Statements, including election of directors, ratification of an independent auditor, and advisory approval of officer compensation.

192.    The false and misleading elements of the Proxy Statements led to the re-election of Defendants Jia, Wang, Chen, Wu, and Xia, which allowed them to continue breaching their fiduciary duties to Kingold.

193.    The Company was substantially damaged as a result of the Individual Defendants' material misrepresentations and omissions in the Proxy Statements.

194.    Plaintiff on behalf of Kingold has no adequate remedy at law.

## SECOND CLAIM

**Against Defendants Jia and Liu for Contribution**
**Under Sections 10(b) and 21D of the Exchange Act**

195.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

196.    Kingold, along with Defendants Jia and Liu are named as defendants in the Securities Class Actions, which assert claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Actions for these violations of law, the Company's liability will be in whole or in part due to Defendants Jia and Liu's willful and/or reckless violations of their obligations as officers and directors of Kingold.

197.    Through their positions of control and authority as officers and directors of Kingold, Defendants Jia and Liu were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts described in the Securities Class Actions and herein.

198.    As such, Defendants Jia and Liu are liable under 15 U.S.C. § 78j(b), which creates

a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-

4(f), which governs the application of a private right of action for contribution arising out of

violations of the Exchange Act.

199.    Accordingly, the Company is entitled to receive all appropriate contribution or

indemnification from Defendants Jia and Liu.

### THIRD CLAIM

**Against the Individual Defendants for Breach of Fiduciary Duties**

200.    Plaintiff incorporates by reference and re-alleges each and every allegation set

forth above, as though fully set forth herein.

201.    Each Individual Defendant owed to Kingold the duty to exercise candor, good faith,

and loyalty in the management and administration of Kingold's business and affairs.

202.    Each Individual Defendant violated and breached his or her fiduciary duties of

candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

203.    The Individual Defendants' conduct described herein was due to their intentional

or reckless breach of the fiduciary duties they owed to Kingold, as alleged herein. The Individual

Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the

rights and interests of the Company.

204.    In breach of their fiduciary duties owed to Kingold, the Individual Defendants

willfully or recklessly caused the Company to engage in the Counterfeit Collateral Scheme and to

make false and misleading statements and omissions of material fact that failed to disclose, *inter

alia*, that (1) the Individual Defendants fraudulently represent gilded copper bars as genuine gold

to Lenders in order to obtain loans; (2) because Kingold's purported gold was actually gilded

copper, the value of the gold assets reported in the Company's financial statements was improperly inflated; (3) Kingold had been a party to material litigation with various Lenders since at least late 2019; (4) as a result of the foregoing, Kingold would predictably be subjected to serious regulatory consequences, including an investigation by the PRC and delisting from the Shanghai Gold Exchange; (5) the Company failed to maintain internal controls; and (6) due to the foregoing, the Individual Defendants' public statements were materially false and misleading at all relevant times.

205.    The Individual Defendants also failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and/or omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

206.    In further breach of their fiduciary duties, the Individual Defendants failed to maintain internal controls, and failed to timely file the Company's 1Q20 10-Q and the 2019 10-K with the SEC.

207.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

208.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to engage in the fraudulent schemes set forth herein and to fail to maintain internal controls. The Individual Defendants had actual knowledge that the Company was

engaging in the fraudulent schemes set forth herein and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent schemes and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

209.    These actions were not a good-faith exercise of prudent business judgment to protect and promote Kingold's corporate interests.

210.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Kingold has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

211.    Plaintiff on behalf of Kingold has no adequate remedy at law.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Kingold, and that Plaintiff is an adequate representative of Kingold;

(b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Kingold;

(c)    Determining and awarding to Kingold the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)      Directing Kingold and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Kingold and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Certificate of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2. a provision to permit the shareholders of Kingold to nominate at least three candidates for election to the Board; and

3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

(e)      Awarding Kingold restitution from Individual Defendants, and each of them;

(f)      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g)      Granting such other and further relief as the Court may deem just and proper.


Dated: September 10, 2020                     Respectfully submitted,


/s/ _____
Vik Pawar (VP9101)

62